Miles T. JACKMAN, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 83–5073.

United States Court of Appeals, Sixth Circuit.

Submitted Sept. 17, 1985.

Decided March 5, 1986.

**760**

Miles T. Jackman, pro se.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., Jolane Findley, Margery Lieber and Bernard Gottfried, Region 7, Regional Director, Detroit, Mich., for respondent.

Before KEITH and KRUPANSKY, Circuit Judges, and PECK, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

Petitioner Miles T. Jackman seeks review of a decision of the National Labor Relations Board's (the Board) General Counsel to withdraw an unfair labor practice complaint and enter into an informal settlement agreement.

On June 25, 1981, Jackman filed an unfair labor practice charge against Q.C. Design Services, Inc. (the Company) alleging that it had unlawfully provided financial assistance and support to Local 155, International Union of Automobile, Aerospace and Agricultural Implement Workers of America (UAW) (the Union) which was seeking to become the bargaining agent for the Company's employees by monthly contributions to the Union, which contributions were equal to Union dues that would have been payable by the affected employees, in violation of Section 8(a)(2) of the National Labor Relations Act (the Act) 29 U.S.C. § 158(a)(2)[1] and that he had been discharged because of his activities on behalf of the Union in violation of Section 8(a)(3) of the Act 29 U.S.C. § 158(a)(3)).[2] On August 10, the Regional Director of the Board's Seventh Region issued a complaint against the Company alleging that it had rendered unlawful aid, assistance and support to the Union by, *inter alia*, contracting with and recognizing the Union as the exclusive collective bargaining representative of the Company's employees when the Union did not represent an uncoerced ma-

1. Section 8(a)(2) provides, in pertinent part, that it is an unfair labor practice for an employer "to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it ...".

2. Section 8(a)(3) provides, in pertinent part, that it is an unfair labor practice for an employer "by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization ...".

jority of the employees in the unit[3] in violation of Sections 8(a)(2) and (3) of the Act. The complaint also asserted that the Company unlawfully laid off and/or constructively discharged Jackman because of his protected concerted activities of complaining to other employees about the Company's actions and decisions concerning the terms and conditions of employment in violation of Section 8(a)(1) of the Act.[4] Further, the complaint noticed that a hearing would be conducted before a designated administrative law judge on July 12, 1982. On September 11, the Company filed its answer to the complaint.[5]

Ten days later, and prior to the commencement of the scheduled hearing, settlement discussions between the Regional Office and the Company proved successful, and on September 21, 1981, the Regional Director and the Company entered into an informal settlement of all outstanding charges against the Company. Pursuant to the settlement, the Company agreed not to recognize the Union until the Union demonstrated that it duly represented an uncoerced majority of the Company's affected employees in the bargaining unit. It also agreed to pay Jackman two weeks' back wages and not retaliate or discriminate against employees who had engaged in protected concerted activities during the time period here in issue. The Company agreed to post a notice essentially incorporating its concessions. Jackman, however, was not offered reinstatement under the conditions of the agreement because the Regional Director's investigation had disclosed evidence that Jackman had sabotaged Company property and had made damaging telephone calls to Company customers.

On September 28, in a letter to the Regional Office, Jackman objected to the settlement agreement, asserting that its terms were not reasonable or acceptable to him. Jackman's objections were predicated solely upon the limited relief the agreement provided him. Jackman demanded full backpay with interest, and reinstatement to his former position. Further, he denied that he had sabotaged Company property or made damaging phone calls.[6]

On September 30, 1981, the acting Regional Director notified Jackman by letter that he had approved the settlement agreement, a copy of which he enclosed, stating:

In view of the undertakings contained in the settlement agreement, it does not appear that it would effectuate the purposes of the National Labor Relations Act to institute further proceedings at this time.

Jackman thereupon appealed the Regional Director's approval of the agreement to the General Counsel, Office of Appeals in Washington, D.C. In his appeal Jackman argued that he had been denied due process and again denied making damaging telephone calls or destroying Company property. Finally, he contended that the witnesses who provided information concerning the phone calls and damage to Company property were biased against him.

Subsequent to an independent investigation by the Regional Director of Jackman's allegations of witness bias, the General Counsel rejected Jackman's appeal for substantially the same reasons set forth in the Regional Director's letter of September 30, 1981. Additionally, General Counsel's rejection letter fully addressed each of the

---

3. The applicable bargaining unit consisted of all the Company's employees except plant guards, firemen, and office and clerical employees.

4. Section 8(a)(1) states that it is an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed" by Section 7 of the Act. Section 157 mandates the employees' right to organize, bargain collectively, etc.

5. Jackman voluntarily withdrew the Section 8(a)(3) charge, which alleged his unlawful dis-

charge for union activity. The Acting Regional director approved the withdrawal.

6. Jackman admitted telephoning one Company supplier to advise it to cease doing business with the Company until the supplier had been paid in full for past service. While Jackman denied any damaging aspect of the call, it carried overtones questioning the financial integrity of the Company.

allegations advanced by Jackman in his appeal.

Jackman continued to file charges with the Regional Office concerning the issues of property damage, the phone calls and witness bias. In a letter dated May 28, 1982, the Regional Director responded to the allegations by directing Jackman to the results of his investigations. Further, the Regional Director suggested that Jackman could formally move for reconsideration the Regional Director's settlement agreement. Jackman refused to avail himself of that opportunity.[7]

Jackman now seeks review in this court of the General Counsel's adverse disposition of his appeal. The Board posits that this court lacks jurisdiction to review the General Counsel's decision because it is not a final appealable order of the Board but rather it is a nonreviewable discretionary prosecutorial act of General Counsel.

The jurisdiction of an appellate court to review Board action rests upon Section 10(f) of the National Labor Relations Act (the Act), 29 U.S.C. § 160(f) which provides in pertinent part:

> Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain review of such order in any circuit court of appeals of the United States ... by filing in such court a written petition praying that the order of the Board be modified or set aside.

The narrow issue joined in this appellate review is whether General Counsel's dismissal of an unfair labor practice complaint, filed by the Regional Director, before hearing and disposition of the complaint by an administrative law judge constitutes a nonreviewable discretionary prosecutorial act of General Counsel or a reviewable "final order of the Board."

█ The National Labor Relations Board Rules and Regulations, Series 8, as amended, Sections 101.1 *et seq.*, 29 C.F.R. §§ 101.1 *et seq.* provide two approaches to settlement of unresolved pending complaints charging unfair labor practices. One procedure is characterized as a "formal" settlement agreement under which practice "the parties agree to waive their right to a hearing and agree that the Board may issue an order requiring the respondent to take action appropriate to the terms of the settlement." 29 C.F.R. § 101.9(b)(1). Formal settlement agreements require approval by the Board as well as the General Counsel. Inasmuch as Board approval is required, the disposition is a "final order" of the Board subject to appellate review. In contrast, Section 101.9(b)(2) provides for an informal settlement agreement concluded prior to commencement of a hearing before an administrative law judge. This type of accord "is not subject to the approval of the Board and does not provide for a Board order." 29 C.F.R. § 101.9(b)(2).

█ It would appear that under the regulations, only a formal settlement agreement is a "final order" of the Board subject to review by a court of appeals. The Supreme Court has recently stated that "[a]n agency's construction of a statute it is charged with enforcing is entitled to deference if it is reasonable and not in conflict with the expressed intent of Congress." *United States v. Riverside Bayview Homes, Inc. et al.*, —— U.S. ——, 106 S.Ct. 455, 461, 88 L.Ed.2d 419 (1985) (citations omitted). A review of the Act's legislative history readily discloses that the Board's interpretation does not conflict with the intent of Congress.

█ As originally promulgated, the Act vested in the Board complete discretion to issue and prosecute unfair labor practice complaints. Under this statutory scheme, the Board acted simultaneously as investi-

---

**7.** In addition to the foregoing, there were related proceedings before the Board dealing with separate allegations raised by Jackman. Jackman sought review of those proceedings in this court. A previous panel of this court granted the Board's motions to dismiss those actions. *Jackman v. NLRB*, 720 F.2d 679 (6th Cir.1983) (Order).

gator, prosecutor, judge and jury.[8] This controversial amalgamation of the prosecutorial and judicial functions generated a continuing dialogue which was highly critical of the centralized authority that had been delegated to the Board. *See International Union of Electrical, Radio and Machine Workers, AFL–CIO v. NLRB*, 289 F.2d 757, 761 (D.C.Cir.1960).

In response to complaints of a lack of uniformity of enforcement and Board bias directed primarily against charged respondents, the Office of General Counsel was created by the Taft-Hartley amendments of 1947. Section 3(d) amended the Act to provide that the General Counsel be vested with "final authority ... in respect of the investigation of charges and issuance of complaints under Section 10, and in respect of the prosecution of such complaints before the Board ...".[9] The obvious intent of amended Section 3(d) was a complete separation of the prosecutorial and adjudicatory functions of the Act, with the former to be exercised by the General Counsel and the latter by the Board.[10]

The House Conference Report reflects the congressional intent without ambiguity.

> The General Counsel ... is to have the *final authority to act in the name of but independently of any direction, control, or review by the Board* in respect of the investigation of charges and the issuance of complaints of unfair labor practices, and in respect to the prosecution of such complaints before the Board.

1 *Legislative History* at 541 (1947) (emphasis added).

Moreover, General Counsel's currently delegated prosecutorial authority was expressly characterized as "vast and unreviewable" and analogous to the broad and unreviewable discretionary prosecutorial authority vested in state attorney generals and prosecutors.[11]

Given this articulation of congressional intent to afford General Counsel the broadest unreviewable discretion in the prosecution of unfair labor practices, this court concludes that regulations which authorize General Counsel to finally dispose of complaints through informal negotiated settlements without board action or approval and prior to hearing are not in conflict with the intent and purposes underlying the Act.

The Supreme Court has stated that "the Board's General Counsel has unreviewable discretion to refuse to institute an unfair labor practice complaint." *Vaca v. Sipes*, 386 U.S. 171, 182, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1967). Moreover, numerous courts of appeals have routinely concluded that such action by the General Counsel is not subject to judicial review. *See, e.g., Echols v. NLRB*, 525 F.2d 288 (6th Cir.1975); *Pacific Southwest Airlines v. NLRB*, 611 F.2d 1309, 1311–12 (9th Cir. 1980) and cases cited therein. *See generally*, 69 A.L.R.Fed. 870 § 3.[12]

---

**8.** See comments of Representative Hartley, 1 *NLRB, Legislative History of the Labor Management Relations Act of 1947* at 613 (1947) (hereafter "Legislative History").

**9.** Section 3(d) provides, in pertinent part:

The General Counsel of the Board shall exercise general supervision over all attorneys employed by the Board (other than trial examiners and legal assistants to Board members) and over the officers and employees in the regional offices. He shall have final authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints under Section 10, and in respect of the prosecution of such complaints before the Board, and shall have such other duties as the Board may prescribe or as may be provided by law.

**10.** Representative Hartley commented during the debates on the Taft-Hartley amendments:

Unlike the old Board, [the new Board] will not act as prosecutor, judge and jury. Its sole function will be to decide cases.

1 *Legislative History* at 297.

**11.** Comments of Senator Taft, 2 *Legislative History* at 1623.

**12.** It should be noted that there is legal authority that recognizes certain exceptions to the broad prosecutorial discretion vested in General Counsel by the 1947 Taft Hartley amendments to the Act; however, the exceptions relate to General Counsel's arbitrary refusal to issue complaints. *See, e.g., Associated Builders & Contractors, Inc. v. Irving*, 610 F.2d 1221 (4th Cir.1979), *cert. denied*, 446 U.S. 965, 100 S.Ct.

Jackman, however, argues that the rationale underlying the cited cases do not apply to this controversy. He argues that prior to issuance of the complaint, General Counsel acts in a purely investigatory and prosecutorial posture, but once the complaint has issued, the prosecutorial function is concluded and the proceedings enter the adjudicatory stage.

As previously noted, existing precedent. reflects that General Counsel's refusal to issue a complaint is within his prosecutorial discretion and the courts are without jurisdiction to review that discretionary act. This court's research has disclosed that neither the congressional history nor existing legal precedent has confined General Counsel's broad prosecutorial authority announced in Section 3(d) of the Act to the. parameters suggested by Jackman's contention.

The authority to initiate and prosecute complaints granted to General Counsel by Section 3(d) "must include the power to determine whether a complaint can be successfully prosecuted and, if he thinks not, to drop it." *Local 282 Teamsters v. NLRB*, 339 F.2d 795, 799 (2d Cir.1964). The issuance of a complaint is merely one of several pretrial discretionary nonreviewable evaluations and/or actions undertaken by General Counsel prior to the commencement of the actual hearing before the administrative law judge.

■ Because the Board's regulations promulgated pursuant to the Act are not in conflict with the expressed intent of Con-

gress and are reasonable, this court concludes that it is without jurisdiction to review the General Counsel's decision to withdraw the unfair labor practice complaint.[13]

■ This court's disposition, moreover, is in keeping with the generally accepted doctrine of promoting settlement agreements, which has been characterized as the "lifeblood of the administrative process," [14] and is of utmost importance to the administration of the Act. Settlement agreements achieved by the General Counsel permit the Board to concentrate its quasi-judicial activities on other matters, thereby enhancing its overall efficient administration. *See Poole Foundry & Machine Co. v. NLRB*, 192 F.2d 740, 742–43 (4th Cir.1951), *cert. denied*, 342 U.S. 954, 72 S.Ct. 626, 96 L.Ed. 709 (1952). Thus, the necessity for the General Counsel to retain final, nonreviewable pretrial discretion to reasonably dispose of all pending controversies before the Board is essential to the implementation of the Act. This authority permits the General Counsel the necessary latitude and flexibility to negotiate informal settlements without the necessity of time consuming formal proceedings—a desirable objective of the Act.

For the foregoing reasons, the petition for review is hereby DENIED.

---

2941, 64 L.Ed.2d 823 (1980) (General Counsel's refusal to issue unfair labor practice complaint not subject to judicial review, unless this act is in excess of delegated powers); *NLRB v. International Brotherhood of Electrical Workers*, 445 F.2d 1015 (9th Cir.1971) (where decision of General Counsel not to issue complaint is wholly without basis in law, district court may mandate issuance of complaint). *See generally* 69 A.L.R. Fed. 870 § 4. Since in the case at bar a complaint did issue, this court is not confronted with the question.

**13.** The conflicting conclusions articulated in *See International Ladies' Garment Workers Union, 415–475 v. NLRB*, 501 F.2d 823 (D.C.Cir.1974); *Leeds & Northrup v. NLRB*, 357 F.2d 527 (3d

Cir.1966) misconstrue the purposes and policy of the Act. In *Local 282, International Brotherhood of Teamsters v. NLRB*, 339 F.2d 795, 798 (2d Cir.1964), the court stated that "the only person to whom the National Labor Relations Act expressly grants the right to a hearing in an unfair labor practice is the person charged ...". The articulated conclusion is inescapable when viewed in light of the pronouncements in *Vaca v. Sipes*, that prosecutions under the Act are brought to vindicate "the public interest in effectuating the policies of federal labor laws, not the wrong done the individual employee ..." 386 U.S. at 182–83, n. 8, 87 S.Ct. at 913, n. 8.

**14.** Final Report, Att'y Gen.Comm.Admin.Procedure, Sen.Doc. No. 8, 77th Cong., 1st Sess. p. 35.