UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL NO. 23, AFL–CIO–CLC, Petitioner,

v.

N.L.R.B., et al., Respondents.

No. 85–3116.

United States Court of Appeals, Third Circuit.

Argued Jan. 9, 1986.

Decided April 16, 1986.

Rehearing and Rehearing En Banc June 13, 1986.

See also 3rd Cir. 788 F.2d 189.

Peter J. Ford (argued), United Food and Commercial Workers Intern. Union, Washington, D.C., for petitioner.

Eric G. Moskowitz (argued) and Aileen A. Armstrong, N.L.R.B., Washington, D.C., for respondents.

Before GARTH and STAPLETON, Circuit Judges, and FULLAM, District Judge *.

## OPINION OF THE COURT

GARTH, Circuit Judge:

In this case, this court is faced with the question of whether a charging party alleg-ing unfair labor practices is entitled to an evidentiary hearing on its objections to proposed informal settlement agreements entered into by representatives of the National Labor Relations Board (Board) and the charged parties after the Board has issued a formal complaint. In *Leeds & Northrup Co. v. NLRB*, 357 F.2d 527 (3d Cir.1966), this court held that "once a complaint has issued, the charging party is entitled to an evidentiary hearing upon its objections to the proposed settlement agreement, be it formal or informal." 357 F.2d at 533. Local 23 has petitioned to review the General Counsel's refusal to entertain its objections to an informal settlement at an evidentiary hearing. We grant the petition and remand for an evidentiary hearing pursuant to *Leeds & Northrup.*

### I.

On August 9, 1984, the United Food and Commercial Workers Union, Local 23, AFL–CIO–CLC (Local 23), filed unfair labor practice charges with the Board against Charley Brothers, Co., Inc., (Charley Bros.) owner and operator of Mars Shop 'N Save, a grocery store located in the Cranberry Mall in Mars, Pennsylvania. In its complaint, Local 23 alleged that Charley Bros. had violated §§ 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and (3),[1] by executing a collective-bargaining agreement containing union security and dues check-off provisions with the United Steelworkers of America, Local 14744, (Steelworkers) at a time when the Steelworkers did not represent an uncoerced majority of the employees.[2] In a separate charge filed that same

---

* Honorable John P. Fullam, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

1. Section 8(a)(1) of the NLRA, 29 U.S.C. § 158(a)(1), provides:

   (a) It shall be an unfair labor practice for an employer—
   
   (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title: ...
   
   In relevant part, section 8(a)(3) of the NLRA, 29 U.S.C. § 158(a)(3), provides:

   (a) It shall be an unfair labor practice for an employer—
   
   (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization:
   
   ...

2. On August 31, 1984, Local 23 amended its complaint against Charley Brothers to add charges that Charley Brothers unlawfully contributed financial and other support to the Steelworkers in violation of section 8(a)(2) of the NLRA, 29 U.S.C. § 158(a)(2).

day, Local 23 alleged that the Steelworkers violated §§ 8(b)(1)(A) and (2) of the NLRA, 29 U.S.C. §§ 158(b)(1)(A) and (2),[3] by executing the collective-bargaining agreement and accepting recognition by Charley Brothers. On September 14, 1984, Gerald Kobell, the Regional Director of the NLRB, consolidated the two complaints and issued formal unfair labor practice charges against Charley Brothers and the Steelworkers.

Specifically, Charley Brothers was charged with:

(1) interrogating employees concerning their activity on behalf of Local 23;

(2) destroying authorization cards given to employees by Local 23 in the presence of employees;

(3) granting recognition to the Steelworkers as the exclusive collective-bargaining representative of its bargaining unit employees at a time when the Steelworkers did not represent an uncoerced majority of the employees;

(4) participating in the solicitation of employee signatures on Steelworkers' authorization cards;

(5) denying Local 23 access to its facility for organizational purposes while granting access to the Steelworkers for the same purpose;

(6) informing employees that Charley Brothers had selected the steward for the Steelworkers;

(7) informing employees that they could only receive union representation by selecting the Steelworkers;

(8) soliciting employee signatures for a petition in support of the Steelworkers on several occasions; and

(9) withholding and deducting dues for the Steelworkers from all bargaining unit employees' pay regardless of whether the employees had authorized such deductions.

App. 23-25; 49.

The Steelworkers were charged with receiving assistance from Charley Bros. and unlawfully bargaining for and executing a collective-bargaining agreement including a union security and dues check-off provision.

To remedy the unfair labor practices allegedly committed by Charley Brothers, the Regional Director sought an order requiring the company to

withdraw and withhold recognition from the Steelworkers as the exclusive bargaining representative of the employees employed at its Mars facility, and to cease and desist from giving any force or effect to any collective-bargaining agreement covering those employees ... unless and until the Steelworkers are certified by the Board as the collective-bargaining representative of the employees at that store.

App. 25-26.

As to the Steelworkers, the Regional Director sought an order requiring the Union to cease accepting recognition as the exclusive bargaining representative of employees employed by the Employer at its Mars facility, to cease and desist from giving any force or effect to any collective-bargaining agreement covering those employees, ... unless and until the [Union] is certified by the Board as the collective-bargaining representative of the employees at that store and to reim-

---

Section 8(a)(2) of the NLRA, 29 U.S.C. § 158(a)(2), in relevant part, provides that:
(a) It shall be an unfair labor practice for an employer—
(2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it: ...

3. Section 8(b)(1)(A), 29 U.S.C. § 158(b)(1)(A), provides in relevant part:
(b) It shall be an unfair labor practice for a labor organization or its agents—

(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title: ...
Section 8(b)(2) of the NLRA, 29 U.S.C. § 158(b)(2), provides in relevant part:
(b) It shall be an unfair labor practice for a labor organization or its agents—
(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section....

burse all present and former employees for any dues, initiation fees and other monies, paid directly to [the Steelworkers] or withheld for [the Steelworkers'] benefit pursuant to the union checkoff authorization provision set forth in the collective-bargaining agreement with appropriate interest.

App. 33.

On September 24, 1984, Vic's Markets acquired the Mars Shop 'N Save Store from Charley Brothers with notice of the unfair labor practice charges pending against Charley Brothers. Vic's Markets extended recognition and assistance to the Steelworkers as the exclusive bargaining representative of the Mars Shop 'N Save employees. Accordingly, on October 11, 1984, Local 23 filed charges against Vic's Markets and the Steelworkers similar to those previously filed against Charley Brothers and the Steelworkers. On November 14, 1984, the Regional Director issued formal unfair labor practice complaints against Vic's Markets and the Steelworkers.[4]

The complaint against Vic's Markets charged that Vic's, as a "successor employer" to Charley Bros., was liable for any unfair labor practices allegedly committed by its predecessor. Further, the complaint alleged that Vic's Markets unlawfully recognized the Steelworkers, enforced the collective-bargaining agreement, and withheld dues on behalf of the Steelworkers in violation of Sections 8(a)(1), (2) and (3) of the NLRA, 29 U.S.C. §§ 158(a)(1), (2) and (3). App. 50–59. The Steelworkers were charged with unlawfully accepting recognition from Vic's Markets, adopting the collective-bargaining agreement and accepting dues from Mars Shop 'N Save employees.

On November 15, 1984, the Regional Director consolidated the four cases against Charley Brothers, Vic's Markets and the Steelworkers and scheduled an unfair labor practice hearing for December 4, 1984. Prior to that date the Board's regional office and the charged parties entered into settlement negotiations, allegedly without notice to Local 23. On November 22, 1984, the scheduled hearing was indefinitely postponed, and, by letter dated November 28, 1984, the Regional Director informed Local 23 of proposed informal settlement agreements in the consolidated cases. In that letter, the Regional Director indicated his intention to approve the agreements "inasmuch as ... [they] fully remedy any violative conduct alleged in [Local 23's] charges." App. 85.

On December 6, 1984, Local 23 submitted to the Regional Director six objections to the proposed informal settlement. Specifically, Local 23 argued that:

(1) The proposed settlement agreements were entered into without the Charging Party being afforded full opportunity to dispose of the cases by amicable adjustment, as required by the Board's rules. Therefore, the agreements are invalid;

(2) The proposed settlement agreements inadequately remedy the unfair labor practices alleged in the consolidated complaints because the sixty (60) day notice posting periods provided therein are of insufficient duration to dissipate the effect of the unfair labor practices and to permit a free representation election. It is necessary to hold an administrative hearing to fully remedy the alleged violations of law;

(3) Since they do not specifically prohibit employees of the Respondent Vic's Markets who are representatives or agents of the Respondent Steelworkers from utilizing the Mars Shop 'N Save facility for organizational purposes during the notice posting period, the proposed settlement agreements inadequately remedy the alleged unfair labor practices because they do not provide Local 23 with any countervailing special access remedies;

(4) The proposed settlement agreements inadequately remedy the alleged unfair

---

4. On November 14, 1984 the Regional Director also amended the September 14, 1984 consolidated complaints against Charley Brothers and the Steelworkers to allege their fraudulent use of an attendance list as a list of employees ratifying the collective-bargaining agreement between the parties.

labor practices because they are not formal settlements providing for Board approval, a Board order and the consent entry of a court judgment enforcing the order;

(5) The proposed settlement agreements inadequately remedy the alleged unfair labor practices because they contain nonadmission clauses whereby the Respondent Vic's Markets and the Respondent Steelworkers do not admit to any violation of the National Labor Relations Act; and

(6) The proposed Notices to Members contain ambiguous language which, if posted, will confuse employees concerning the factual background of the settlements and the exercise of their Section 7 rights.

App. 101–102.

Further, Local 23 requested that the Regional Director "afford Local 23 an evidentiary hearing on its objections to the proposed settlement agreements." App. 101.

By letter of December 12, 1984, the Regional Director informed Local 23 of his approval of the settlement agreements and the corresponding withdrawal of the Board's pending unfair labor practice complaints against Vic's Markets, Charley Bros. and the Steelworkers. Responding to Local 23's objections, the Director substantially rejected Local 23's contentions, although he did modify some of the language in the proposed notices to employees to remedy alleged ambiguities noted in Local 23's objections. App. 109–110.

Local 23 thereupon appealed to the General Counsel of the Board the Regional Director's approval of the settlement agreements and his refusal to hold an evidentiary hearing. App. 127.[5] On January 22, 1985, the General Counsel denied Local 23's appeal. Referring to Local 23's argument that the Board's failure to hold an evidentiary hearing on its objections invali-

dated the informal settlement agreements, the General Counsel stated:

It is the policy of this office, however, that a Charging Party's right to contest a proposed informal settlement agreement is properly and exclusively governed [sic] Sections 101.9(c)(1), (2), and 102.19 of the Board's rules and regulations. Inasmuch as the evidence indicates that these procedures were properly followed, insufficient basis exists to invalidate the settlement agreements on those grounds.

App. 132.

Following the General Counsel's denial of its administrative appeal, Local 23 filed a timely petition for review in this Court. For the reasons expressed below, we will grant Local 23's petition, vacate enforcement of the settlement agreements, and remand the proceedings to the Board for the purpose of holding an evidentiary hearing on Local 23's objections to the informal settlement agreements.

II.

In *Leeds & Northrup Co. v. NLRB*, 357 F.2d 527 (3d Cir.1966), this court specifically addressed the issue presented by this appeal. There, we held that once a formal unfair labor practice complaint had been issued by the Board, a "charging party is entitled to an evidentiary hearing upon its objections to the proposed settlement agreement, be it formal or informal." 357 F.2d at 533. On this appeal, it cannot be disputed that *Leeds & Northrup* is controlling.[6]

Nevertheless, the Board vigorously argues that *Leeds & Northrup* "was wrongly decided and should now be overturned." NLRB Br. at 9. However, the Internal Operating Procedures of this Court, Chapter 8.C., flatly prohibit a panel of this court from overruling a published opinion of a previous panel.[7] *See, e.g., O. Hommel Co.*

---

**5.** Local 23 withdrew objections two and three noted above as grounds for overturning the proposed settlement agreements. App. 128.

**6.** The Board and General Counsel "acknowledge that the Court's opinion in *Leeds & Northrup* is controlling in this case." NLRB Br. at 9.

**7.** IOP 8.C. provides:

*v. Ferro Corp.,* 659 F.2d 340, 354 (3d Cir. 1981), *cert denied* 455 U.S. 1017, 102 S.Ct. 1711, 72 L.Ed.2d 134 (1982); *Byrnes v. Debolt Transfer, Inc.,* 741 F.2d 620, 625 (3d Cir.1984). Thus, this panel has no authority to depart from *Leeds'* holding, and unless the instant appeal may be distinguished from *Leeds,* we are obliged to remand for an evidentiary hearing.

### III.

In *Leeds & Northrup,* the company claimed that the Union had coerced its employees during a plant strike by, among other things, threatening company employees with violence, loss of employment and union fines if they crossed the picket lines or refused to participate in strike activities. A formal complaint was filed by the Board against the Union for having violated 8(b)(1)(A) of the Act and a hearing before a trial examiner was scheduled. Prior to the hearing, the Regional Director and the Union entered into an informal settlement agreement without informing the company of the settlement.

The company, as a charging employer, filed a motion with the Regional Director seeking a hearing on the Board's complaint and also filed formal objections to the settlement agreement. The Regional Director nevertheless approved the settlement agreement, withdrew the Board's complaint, rejected Leeds' objections and denied Leeds' request for a hearing.

Leeds sought review with the General Counsel, who approved the Regional Director's action, observing that the unfair labor practices had ceased. Leeds thereupon appealed to this court, claiming the denial of an evidentiary hearing was a final action of the Board and sought to have the General Counsel's action set aside. The Board claimed that no final order had been entered and therefore this court had no jurisdiction to review the decisions of the Regional Director and the General Counsel. It also contended that no hearing was necessary because the unfair labor practices had been discontinued and the issue was therefore moot.

Rejecting the Board's position, this court held that there was no distinction between disposition of complaints by formal or informal settlements. The court held that no lack of jurisdiction precluded consideration of Leeds' appeal by the court. We went on to hold that once a complaint has issued, the charging party is entitled to an evidentiary hearing upon its objections to the proposed settlement agreement, be it formal or informal. We noted that only where the General Counsel had, after investigation, elected *not* to issue a complaint, was his action to be deemed discretionary and within the exclusive power of the General Counsel to resolve. In *Leeds,* because a formal complaint had issued, but no hearing had been allowed, the action of the Board was vacated and remanded for an evidentiary hearing.

Here, too, a formal complaint had issued, but the requested evidentiary hearing was denied. We can discern no principled distinction between *Leeds* and the instant case. Indeed, as we have noted, the Board apparently cannot either. *See* n. 6 *supra.*

It may be argued that a distinction should be drawn between objections which raise material disputes of fact, and objections which involve merely procedural matters or discretionary determinations concerning the remedy, and that hearings should be required only where factfinding is essential. We have employed that type of analysis in analogous situations where we have required evidentiary hearings only in instances where the Regional Director's investigation has disclosed material dis-

---

C. Policy of Avoiding Intra-Circuit Conflict of Precedent.

It is the tradition of this court that reported panel opinions are binding on subsequent panels. Thus, no subsequent panel overrules a published opinion of a previous panel. Court in banc consideration is required to overrule a published opinion of this court.

Recognizing that *Leeds & Northrup* governed this appeal, on July 31, 1985 the Board sought initial in banc hearing prior to a panel's consideration of the instant appeal. That petition was denied by this court on September 5, 1985.

putes of fact. *See, e.g., Vitek Electronics, Inc. v. NLRB,* 653 F.3d 785 (3d Cir.1981); *Anchor Inns, Inc. v. NLRB,* 644 F.2d 292 (3d Cir.1981).

Such a distinction, however, while it may prove attractive to those who disagree with *Leeds* or to courts which encounter this problem as a matter of first impression, cannot control the disposition of this appeal. *Leeds,* as we have pointed out, is on virtually all fours with the instant case and, while the opportunity for such a distinction was available in *Leeds,* it was not seized. *Leeds'* holding leaves no room for such a distinction to be drawn here.

Thus, while Local 23's objections in this case do not bear on the substantive provisions of the informal settlement agreements, and a *Leeds* evidentiary hearing might therefore result in mere adherence to an empty formality, nevertheless we, as a panel, even if we were so disposed, are not free to change or modify *Leeds* despite arguments and ostensible precedents to the contrary.[8] *See International Ladies' Garment Workers Union v. NLRB,* 501 F.2d 823, 832-33 (D.C.Cir.1974) (evidentiary hearing on objections to proposed informal settlement agreement not required where there are no genuine issues of material fact as to substantive relief provided); *see also Cuyahoga Valley Railway Co. v. United Transportation Union,* — U.S. —, —, 106 S.Ct. 286, 287, 88 L.Ed.2d 2 (1985) (Secretary of Labor's decision to withdraw complaint charging an employer with violation of the Occupational Health and Safety Act, 29 U.S.C. § 651, *et seq,* upon reaching informal settlement agreement not reviewable by the Occupational Safety and Health Review Commission).

## IV.

Any attempt to modify the *Leeds* jurisprudence in this circuit necessarily must be

accomplished by the full court and cannot be effected by a panel which is bound to follow prior precedent. Because, as we have observed, *Leeds* is controlling, we will grant Local 23's petition for review and thus remand to the Board. We will also vacate the informal settlement agreements, and direct that the unfair labor practice complaints be reinstated so that the evidentiary hearing on Local 23's objections may be held, all as required by *Leeds.*

---

**8.** Subsequent to argument in this case, we have become aware of a recent decision of the Sixth Circuit holding that an informal settlement agreement reached after issuance of a formal complaint by the Regional Director of the NLRB is not a final order for purposes of review by a Court of Appeals. *Jackman v. NLRB,* 784 F.2d 759 (6th Cir.1986). Referring to *Leeds*

*& Northrup,* the *Jackman* court stated that our decision "misconstrue[d] the purposes and policy of the [National Labor Relations] Act." At 764, n. 13. Despite the conflict among the Circuits which today's affirmance of *Leeds* perpetuates, we are nevertheless constrained to adhere to *Leeds.*