**Gerald KOBELL, Regional Director for Region Six of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD**

v.

**UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION, LOCAL 23, AFL–CIO–CLC, Appellant.**

No. 85–3261.

United States Court of Appeals, Third Circuit.

Argued Jan. 9, 1986.

Decided April 16, 1986.

Rehearing and Rehearing En Banc Denied May 21, 1986.

---

Rosemary M. Collyer, Gen. Counsel, Joseph E. Mayer, (argued), Asst. Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, John W. Hornbeck, Deputy Asst. Gen. Counsel, Harold J. Datz, Associate Gen. Counsel, Barbara A. O'Neill, N.L.R.B., Washington, D.C., for appellee.

Peter J. Ford, (argued), United Food and Commercial Workers Intern. Union, Washington, D.C., James R. Reehl, United Food and Commercial Workers Intern. Union, Local 23, Pittsburgh, Pa., for appellant.

Before GARTH and STAPLETON, Circuit Judges, and FULLAM, District Judge.*

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

This is an appeal from a district court's order granting a preliminary injunction requested by a Regional Director of the National Labor Relations Board (NLRB) against the appellant union's recognition picketing. We affirm.

### I

Appellant is a labor organization, seeking to represent the employees of Vic's Markets, Inc. ("Vic's"). Vic's sells grocery products at its retail store in Mars, Pennsylvania. Appellant is not the certified or recognized representative of the Vic's employees at its Mars store.

In May of 1984, appellant began a campaign to organize the employees of Charley Brothers Company, Inc., the previous operator of Vic's Mars store. Soon after embarking on this campaign, appellant learned that Charley Brothers had extended recognition to and entered into a collective bargaining agreement with the United Steelworkers of America and its Local 14744 (the "Steelworkers").

In August of 1984, appellant filed unfair labor practice charges against Charley Brothers, alleging violations of National Labor Relations Act (NLRA) Sections 8(a)(1)–(3), 29 U.S.C. §§ 158(a)(1)–(3) (1982).[1]

On September 14, 1984, Gerald Kobell, a Regional Director of the NLRB, filed unfair labor practice charges against Charley Brothers. On September 24, 1984, Charley Brothers sold its Mars store to Vic's. Prior to this sale, Vic's was put on notice of the pending unfair labor practice charges. Following the sale, Vic's extended recognition to the Steelworkers. In October of 1984, appellant filed unfair labor practice charges with the NLRB alleging that Vic's had recognized the Steelworkers as the exclusive bargaining agent of Vic's employees in violation of NLRA Sections 8(a)(1)–(3). On November 14, 1984, the Regional

---

* Honorable John P. Fullam, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. Section 158. *Unfair labor practices*

(a) It shall be an unfair labor practice for an employer—

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

(2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it....

(3) by discrimination in regard to hire or tenure of employment of any term or condition of employment to encourage or discourage membership in any labor organization: *Provided,* That nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in this subsection as an unfair labor practice) to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later, (i) if such labor organization is the representative of the employees as provided in section 159(a) of this title, in the appropriate collective-bargaining unit covered by such agreement when made, and (ii) unlessfollowing an election held as provided in section 159(e) of this title within one year preceding the effective date of such agreement, the Board shall have certified that at least a majority of the employees eligible to vote in such election have voted to rescind the authority of such labor organization to make such an agreement: *Provided further,* That no employer shall justify any discrimination against an employee for nonmembership in a labor organization (A) if he has reasonable grounds for believing that such membership was not available to the employee on the same terms and conditions generally applicable to other members, or (B) if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership.

Director of the NLRB issued an unfair labor practice complaint against Vic's.

The complaint alleged that Vic's had continued the unfair labor practices of Charley Brothers. Specifically, the Regional Director alleged that Vic's was on notice of and failed to remedy the following unfair labor practices of Charley Brothers: the interrogation of employees about their activities on behalf of appellant; the destruction of authorization cards given to employees by appellant; the participation in the solicitatoin of signatures on the Steelworkers' authorization cards; the denial of appellant's access to the workplace for organization purposes while permitting the Steelworkers access; the making of statements that collective representation was possible only through the Steelworkers and that Charley Brothers had already selected a Steelworkers steward; the fraudulent utilization of a meeting attendance list as a collective bargaining agreement employee ratification list; the recognition of the Steelworkers as the exclusive employee collective bargaining agent when the Steelworkers did not represent an uncoerced majority of the employees; and the deduction of Steelworkers' dues from employee pay, regardless of whether the employees had authorized such a deduction. The complaint further alleged that Vic's recognized the Steelworkers, adopted the Steelworkers' collective bargaining agreement, and deducted Steelworkers' dues from employees' pay.

A hearing was scheduled for December 4, 1984. However, at the end of November, 1984, a Settlement Agreement was announced under which Vic's agreed to post a notice for sixty days informing employees that it would no longer continue in Charley Brothers' unfair labor practices, that it would no longer give effect to the collective bargaining agreement with the Steelworkers, that it would not recognize the Steelworkers as exclusive collective bargaining representatives unless and until lawfully elected by the employees and certified by the NLRB, and that it would repay all previously deducted Steelworkers dues. Following Vic's full compliance with the Settlement Agreement, the NLRB Regional Director, on December 26, 1984, withdrew his complaint, over appellant's objection. Appellant appealed this decision to the NLRB General Counsel, who approved it on January 22, 1985.

From September, 1984 until the preliminary injunction was issued, appellant picketed Vic's Mars store. On April 4, 1985, Vic's filed an unfair labor practice charge with the NLRB claiming that appellant was picketing in violation of NLRA Section 8(b)(7)(C), 29 U.S.C. § 158(b)(7)(C) (1982).[2]

The NLRB Regional Director investigated the charge and filed a complaint with the NLRB. He then petitioned the district court for the Western District of Pennsyl-

2. Section 158(b)(7)(C) provides:

(b) It shall be an unfair labor practice for a labor organization or its agents—

   \*    \*    \*  .\*    \*    \*

(7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:

   \*    \*    \*    \*    \*    \*

(C) where such picketing has been conducted without a petition under section 159(c) of this title being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: *Provided.* That when such a petition has been filed the Board shall forthwith, without regard to the provisions of section 159(c)(1) of this title or the absence of a showing of a substantial interest on the part of the labor organization, direct an election in such unit as the Board finds to be appropriate and shall certify the results thereof: *Provided further.* That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employer by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services.

vania for injunctive relief under NLRA Section 10(*l*), 29 U.S.C. § 160(*l*) (1982).³ After an evidentiary hearing, the district court found that the NLRB had proffered sufficient evidence to indicate that the Regional Director had reasonable grounds to believe that appellant was picketing Vic's in violation of NLRA Section 8(b)(7)(C). The court further found that injunctive relief was just, proper, and necessary to prevent further picketing. This timely appeal followed.

## II

The district court found reasonable cause to believe that, since September 24, 1984, appellant had picketed the Mars store in order to force Vic's to recognize and bargain with it as the representative of the store's employees. Since the court also found that appellant was not currently certified or recognized as the bargaining representative of those employees and had not petitioned for a representation election, it further concluded that there was reasonable cause to believe the appellant's picketing violated Section 8(b)(7)(C) of the NLRA.

Appellant does not challenge these findings. Rather it argues that injunctive relief should have been denied because the Regional Director invoked NLRA Section 10(*l*) in violation of the second "proviso" of that section which reads as follows:

*Provided further.* That ... [a Regional Director] shall not apply for a restraining order under [this section based on NLRA Section 8(b)(7)] ... if a charge against the employer under [NLRA Section 8(a)(2)] ... has been filed and after the preliminary investigation, he has reasonable cause to believe that such charge is true and that a complaint should issue.

In support of this contention, appellant argued before the district court that the settlement of its Section 8(a)(2) charges against Vic's was legally invalid and the Regional Director's withdrawal of his complaint a legal nullity because the NLRB had failed to provide appellant with an evidentiary hearing on its objections to the settlement as required by the Administrative Procedure Act and *Leeds & Northrup Co. v. NLRB*, 357 F.2d 527 (3d Cir.1966). For these reasons, appellant insisted that its Section 8(a)(2) charge had not been remedied and that the proceedings resulting from that charge were still pending before the NLRB.

The Regional Director responded that all of appellant's Section 8(a)(2) charges had been addressed and fully remedied by the settlement that no presettlement hearing was legally required, and that, in any event, relief was available under Section 10(*l*) when a previously pending Section 8(a)(2) charge had been resolved in this manner, whether or not procedural errors

---

**3.** Section 160(*l*) provides:

Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4)(A), (B), or (C) of section 158(b) of this title, or section 158(e) of this title or section 158(b)(7) of this title, the preliminary investigation of such charge shall be made forthwith and given priority over all other cases except cases of like character in the office where it is filed or to which it is referred. If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any United States district court within any district where the unfair labor practice in question has occurred, is alleged to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief pending the final adjudication of the

Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law: ... *Provided further,* That such officer or regional attorney shall not apply for any restraining order under section 158(b)(7) of this title if a charge against the employer under section 158(a)(2) of this title has been filed and after the preliminary investigation, he has reasonable cause to believe that such charge is true and that a complaint should issue. Upon filing of any such petition the courts shall cause notice thereof to be served upon any person involved in the charge and such person, including the charging party, shall be given an opportunity to appear by counsel and present any relevant testimony.

.    .    .    .    .

had occurred in the proceedings before the Board.

In response to appellant's argument based on the second proviso of Section 10(*l*), the district court found, as a matter of fact, (1) that the Section 8(a)(2) "charge ... [had] been fully remedied by the terms of a Settlement Agreement entered into by Vic's Markets", and (2) that "no charge [was] ... currently pending before the Board under Section 8(a)(2)...." It then concluded, as a matter of law, that Section 10(*l*) was applicable and authorized injunctive relief on the facts before it. Since the district court did not address *Leeds & Northrup Co. v. NLRB* or the issue of whether a presettlement hearing was required, we read the district court's conclusions of law to accept the view that Section 10(*l*) relief is available on the facts of this case whether or not there was procedural error before the Board.

### III

We cannot say that the factual findings of the district court are clearly erroneous. Indeed, appellant does not maintain that there is any evidentiary deficiency in the record before the district court.[4] Rather, it contends that, as a matter of law, (1) a settlement arrived at without a presettlement hearing cannot "fully remedy" a Section 8(a)(2) charge, and (2) the Section 8(a)(2) complaint remained pending before the Board despite the Regional Director's purported withdrawal.

Because the district court's factual findings are not clearly erroneous, we accept as historical fact that, as of the time of the application for an injunction, the employer's Section 8(a)(2) violation had been fully remedied and no further proceedings were expected before the NLRB on the Section 8(a)(2) complaint absent a successful appeal and a return of the case for an evidentiary hearing on the settlement. Given these

facts, we conclude that the district court's interpretation of Section 10(*l*)'s second proviso was not legally erroneous. In reaching this conclusion, we, like the district court, find it unnecessary to address the *Leeds* issue.

■ We believe the appellant's formalistic argument ignores the interrelationship among NLRA Sections 8(a)(2), 8(b)(7), and 10(*l*) and the Congressional intention behind their enactment. Section 8(b)(7)(C) prohibits organizational or recognitional picketing by an uncertified union unless an election petition is filed under NLRA Section 9(c) within a reasonable period of time, not to exceed thirty days. If no such petition is filed, continuation of the picketing beyond the reasonable period becomes an unfair labor practice. *See, e.g., NLRB v. Suffolk County District Council*, 387 F.2d 170, 173 (2d Cir.1967), citing with approval *International Hod Carriers, Local 840 (Blinne Construction Co.)*, 135 NLRB 1153, 1167 (1962); *Dayton Typographical Union v. NLRB*, 326 F.2d 634, 636 (D.C. Cir.1963); Meltzer, *Organizational Picketing and the NLRB*, 30 U.CHI.L.REV. 78, 79–83 (1962). Section 8(b)(7)(C) thereby removes the threat to employees' free choice by encouraging prompt resort to the Board's election machinery, rather than the economic pressure of picketing, as the method for resolving questions of representation.

Congress's concern with the effects of proscribed recognitional and organizational picketing is further reflected by its amendment to Section 10(*l*) to include this unlawful conduct within the "mandatory" injunction provisions of Section 10(*l*). When taking this action, Congress recognized only one, limited situation in which it would be inappropriate to preliminarily enjoin under Section 10(*l*) picketing allegedly violative of NLRA Section 8(b)(7)—namely, where

---

4. This is not to say that appellant is content with the Settlement Agreement. It objects to the settlement (1) because it was informal and thus not enforceable on pain of contempt, (2) because it contained no admission by Vic's that it had violated the NLRA, and (3) because the

notice required to be posted under the settlement contained ambiguous and confusing language. Appellant's Brief p. 26. However, appellant expressly disavows any argument that the court's findings of fact are clearly erroneous. Appellant's Reply Brief p. 18.

the picketed employer is unlawfully recognizing or otherwise giving illegal assistance to another labor organization.

■ The legislative history of the second proviso of Section 10($l$) makes it clear that this narrow exception to the otherwise mandatory Section 10($l$) injunction was intended to apply in situations where the picketed employer has already sought to entrench a "sweetheart" union in violation of the employees' right to free choice. The legislative history is replete with discussions of the need to safeguard picketing unions against any possible injustice that might flow from a rule that would preclude their picketing while the employer has unlawfully recognized another union. *See* comments of Sen. Prouty, 105 CONG.REC. S5961–62, reprinted in II LEGISLATIVE HISTORY OF THE LABOR MANAGEMENT REPORTING AND DISCLOSURE ACT OF 1959 (II "LEG. HIST. LMRDA") at 1184–85 (1959); comments of Sen. Morse, 105 CONG.REC. S5966, II LEG. HIST. LMRDA at 1189; comments of Mr. Previant, Special Counsel for the International Brotherhood of Teamsters, 105 CONG.REC. H9693–9694, II LEG. HIST. LMRDA at 1493–94; comments of Sen. Barry Goldwater, 105 CONG.REC. A8357–58, II LEG. HIST. LMRDA at 1828–29. Thus, Congress was concerned that absent a restriction to Section 10($l$), a "sweetheart" union would enjoy a superior position over any competing union in obtaining the employees' support. Accordingly, the proviso was intended to prevent an unlawfully assisted union from enjoying the benefits and advantages of its illegal assistance while, at the same time, an unassisted, competing union is being enjoined from organizational or recognitional picketing.

■ As earlier noted, the second proviso of Section 10($l$) bars a Regional Director from seeking to enjoin union picketing if a Section 8(a)(2) charge has been filed against the employer and if he "has reasonable cause to believe that such charge is true and that a complaint should issue."

Appellant acknowledges, as it must, that the existence of these three prerequisites of the proviso at one point in time does not *permanently* bar Section 10($l$) relief. The dispute in this case is when the Regional Director's disability terminates. Given the rationale for this narrow exception to Section 10($l$) and the wording of the text, we believe the disability should terminate when the Regional Attorney no longer has reason to believe that the Section 8(a)(2) charge is "true" and is no longer pursuing the complaint before the Board. When, as here, the Section 8(a)(2) violations have been fully remedied and there are no ongoing proceedings before the Board, it seems highly unlikely that Congress intended union conduct in violation of Section 8(b)(7) to be immune from judicial intervention.

Shortly before the Regional Director instituted his Section 10($l$) proceeding in the district court, appellant filed with this Court a petition to review the approval of the informal settlement and the purported withdrawal of the complaint. In that proceeding, we have today reaffirmed that, under *Leeds*, appellant was entitled to a presettlement evidentiary hearing and the Regional Attorney's withdrawal of the complaint was not authorized by the Act. *United Food & Commercial Workers Union, Local No. 23 v. N.L.R.B.*, 788 F.2d 178 (3d Cir.1986). This conclusion does not, however, control the disposition of the issue posed in this case. We believe Section 10($l$) must be given a practical construction which reflects its purpose and that applications under that section must be disposed of based upon the facts as they appear at the time the district court is required to make a ruling. From this perspective, the possibility that the Section 8(a)(2) proceeding against Vic's, because of *Leeds*, might be returned to the Board at some time in the future, did not require the district court to countenance union conduct violative of Section 8(b)(7) when the offending conduct of the employer was found to have ceased and been fully remedied.[5]

---

**5.** We hold only that the circumstances as of the time of the Regional Attorney's application under Section 10($l$) warranted injunctive relief under that Section. Once the Section 8(a)(2)

## IV

The judgment of the district court will be affirmed.

complaint is returned to the Board, this holding neither precludes an application for modifica-tion or vacation of the injunction nor dictates the appropriate disposition thereof.