**GEORGE BANTA COMPANY, INC.,**
**Banta Division, Petitioner,**

v.

**NATIONAL LABOR RELATIONS**
**BOARD, Respondent.**

No. 79–1283.

United States Court of Appeals,
Fourth Circuit.

Argued April 9, 1980.

Decided July 24, 1980.

Jeffrey L. Madoff, Chicago, Ill. (R. Theodore Clark, Jr., Michael J. Rybicki, Grant E. Morris, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., on brief), for petitioner.

---

**3.** H.R.Rep. No. 94–1558, p. 4 n. 6 (1976); *Hutto v. Finney,* 437 U.S. 678, 694–95 n. 23, 98 S.Ct. 2565, 2575–76 n. 23, 57 L.Ed.2d 522 (1978).

Christopher Katzenbach, NLRB, Washington, D. C. (Norton J. Come, Acting Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Aileen Armstrong, Asst. Gen. Counsel for Special Litigation, Washington, D. C., on brief), for respondent.

Thomas D. Allison, Chicago, Ill. (Irving M. King, Cotton, Watt, Jones, King & Bowlus, Chicago, Ill., on brief), for intervenor.

Before WINTER and BUTZNER, Circuit Judges, and HOUCK *, District Judge.

WINTER, Circuit Judge:

George Banta Company, Inc. (the Company) petitions us to review and vacate an order of the Office of General Counsel, National Labor Relations Board, sustaining in part a decision of the Regional Director. The Regional Director had withdrawn and determined not to reissue a complaint that initiation fees to be charged persons seeking membership in Tri-Cities Local 383, Graphic Arts International Union, AFL–CIO (the Union) was a discriminatory levy on employees who had resigned membership of the Union during a strike and had returned to work across Union picket lines. Concluding that we lack jurisdiction, we dismiss the petition.

I.

The Company, which is engaged in the printing business, sustained a strike by its employees, who were members of the Union, from April 4, 1977 to October 10, 1977. During the course of the strike, approximately seventy-two employees resigned their Union membership and returned to work. When the strike was settled, the Union increased its initiation fees from the previous rates of $25 and $50 to a formula which resulted in charges of approximately $350 and $450. The new collective bargaining contract created a closed shop so that membership in the Union was a condition precedent to employment.

On January 19, 1978, the Company filed with the Board unfair labor practice charges against the Union. It alleged that the new initiation fee was both discriminatory, i. e., it was designed to punish those employees who had resigned from the Union and worked during the strike, and excessive in the light of the prevailing initiation fees charged by similarly situated unions in the area. Following an investigation, the Regional Director issued a complaint charging that the new initiation fees fixed by the Union were both excessive and discriminatory.

After the complaint was issued, settlement discussions between the Regional Office and the Union proved successful, and they entered into an informal settlement. Under that accord, the Union agreed not to establish an initiation fee in excess of $250 and to make refund, with interest, to members who had paid a greater amount, and the Regional Director agreed to withdraw the charge that the fee was excessive. At about the same time, the Regional Director, who had satisfied himself from further investigation that he could not prove the charge of discrimination, concluded to dismiss the charge that the fee was discriminatory. The notice to the Company of the proposed settlement did not include specific notice that the Regional Director had concluded to dismiss the charge of discrimination. It spoke explicitly only of the reduction of the initiation fee. Arguably, however, from the reference in the letter to docket numbers, to the fact that the settlement would dispose of all charges, and to the proposed notice to employees that the Company would not establish initiation fees that restrained or coerced employees in the exercise of their rights, the Company should have been aware that the Regional Director intended to dismiss the discrimination charge as part of the settlement agreement.

The Company declined to accept this settlement. It took an administrative appeal

* Hon. C. Weston Houck, District Judge, United States District Court for the District of South Carolina, sitting by designation.

to General Counsel in which it complained both that the fee was still excessive and that the settlement did not redress the discriminatory imposition of the new fee. General Counsel treated the appeal as being from the Regional Director's approval of an informal settlement and the Regional Director's refusal to reissue the charge that the fee was discriminatory. General Counsel approved the dismissal of the charge that the fee was discriminatory, but he concluded that the $250 maximum initiation fee permitted by the settlement was still excessive. Accordingly, the case was remanded for issuance of a new complaint that the fee was excessive and therefore in violation of § 8(b)(5) of the Act. The new complaint was issued and is presently pending.

After proceedings were instituted before us, General Counsel concluded that there were procedural irregularities, i. e., lack of notice and an opportunity to appeal, with respect to dismissal of the discrimination charge. Accordingly, he directed the Regional Director to act formally on the discrimination charge. The Regional Director then notified the Company by letter of June 22, 1979, that the discrimination charge was dismissed for lack of sufficient evidence of a discriminatory motive and that he was refusing to reissue a complaint based on that charge. He also gave the Company formal notice of its right to appeal. The Company exercised that right and on July 12, 1979, the Office of Appeals denied the Company's appeal for the reasons assigned by the Regional Director in his letter of June 22.

## II.

The jurisdiction of the United States courts of appeals to review an order of the Board at the instance of a person aggrieved thereby is limited to "a final order of the Board granting or denying in whole or in part the relief sought . . . ." 29 U.S.C. § 160(f). The phrase "final order of the Board" as used in § 160(f) "refers solely to an order of the Board either dismissing a complaint in whole or in part or directing a remedy for the unfair labor practices found,

that is to an order entered as a culmination of the procedure described in Sections 10(b) and (c) of the Act, as amended [an order entered after the issuance of a complaint, after a hearing thereon and decision thereof on the merits]." *Lincourt v. NLRB*, 170 F.2d 306, 307 (1 Cir. 1948). The action sought to be reviewed here is the decision of the General Counsel to withdraw and not to prosecute further the charge in the complaint originally issued against the Union that the initiation fee was discriminatory. General Counsel, in arriving at this decision, was exercising the authority contained in 29 U.S.C. § 153(d), which vests in him "final authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints under section 10, and in respect of the prosecution of such complaints before the Board . . . ."

The legislative history of § 153(d) indicates that a prosecutorial decision of General Counsel is not subject to review by the Board or by a court, I NLRB, Legislative History of the Labor Management Relations Act, 1947 at 541, 883, 1538, 1622–23 (1948). As a consequence, courts have uniformly held that General Counsel's decision whether to issue an unfair labor practice complaint is not reviewable. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 138–39, 95 S.Ct. 1504, 1510–11, 44 L.Ed.2d 29 (1975); *Wellington Mill Division v. NLRB*, 330 F.2d 579, 590–91 (4 Cir.), *cert. denied*, 379 U.S. 882, 85 S.Ct. 144, 13 L.Ed.2d 88 (1964). In the instant case, the complaint had originally issued; and after further investigation following its issuance, General Counsel concluded not to press it or reinstate it. The same rule is applicable, however, because the authority vested in General Counsel over the prosecution of complaints "must include the power to determine whether a complaint can be successfully prosecuted and, if he thinks not, to drop it." *Local 282, Teamsters v. NLRB*, 339 F.2d 795, 799 (2 Cir. 1964). In short, our jurisdiction to review General Counsel's prosecutorial decisions does not depend upon whether or not he has issued a complaint. It is the character of the decision which is critical. Where, as here, the decision is fundamentally prosecutorial—based essentially upon a determi-

nation that the available evidence will not support prosecution of the alleged violation—we hold that we lack jurisdiction to review.

We note the Company's heavy reliance on *International Ladies Garment Workers Union v. NLRB*, 501 F.2d 823 (D.C.Cir.1974) and *Leeds & Northrup Co. v. NLRB*, 357 F.2d 527 (3 Cir. 1966) to support a contrary result. But we think that both cases are inapposite. Both involved the withdrawal of charges pursuant to an informal settlement agreement which adjusted conflicting interests and both held that such post-complaint settlements are reviewable. In the instant case, despite the fact that the settlement agreement may be read to include dismissal of the discrimination charge as well as to settle the charge that the initiation fee was excessive, we think that the decision not to proceed with the discrimination charge was based essentially upon the independent conclusion that the available evidence was insufficient to prove the charge. It was not relinquishment of a cause of action having possible merit in an effort to achieve other objectives; it was recognition that a cause of action could not be proved. As such, it was an unreviewable prosecutorial decision.

DISMISSED.