NATIONAL LABOR RELATIONS BOARD ET AL. *v.*
UNITED FOOD & COMMERCIAL WORKERS UNION,
LOCAL 23, AFL–CIO

No. 86–594.   Argued October 5, 1987—Decided December 14, 1987

BRENNAN, J., delivered the opinion for a unanimous Court. SCALIA, J., filed a concurring opinion, in which REHNQUIST, C. J., and WHITE and O'CONNOR, JJ., joined, *post,* p. 133.

*Norton J. Come* argued the cause for petitioners. With him on the briefs were *Solicitor General Fried, Deputy Solicitor General Cohen, Andrew J. Pincus, Linda Sher,* and *Eric G. Moskowitz.*

*Laurence Gold* argued the cause for respondent. With him on the brief were *George Murphy, Peter Ford, David Silberman,* and *George Kaufmann.*\*

JUSTICE BRENNAN delivered the opinion of the Court.

The question to be decided in this case is whether a federal court has authority to review a decision of the National Labor Relations Board's General Counsel dismissing an unfair labor practice complaint pursuant to an informal settlement in which the charging party refused to join. We hold that such a dismissal is not subject to judicial review under either the amended National Labor Relations Act or the Administrative Procedure Act.

I

In August 1984, respondent, the United Food Workers, filed unfair labor practice charges with the Pittsburgh re-

---

\**John S. Irving, Glenn Summers, Stephen A. Bokat,* and *Robin S. Conrad* filed a brief for the Chamber of Commerce of the United States as *amicus curiae* urging reversal.

gional office of the National Labor Relations Board (Board). The charges alleged that Charley Brothers, Inc., the owner of several grocery stores, and the United Steelworkers Union (Steelworkers) had committed an unfair labor practice by bargaining for and executing a collective-bargaining agreement for a Charley Brothers store where the Steelworkers did not represent an uncoerced majority of the employees. The Regional Director duly investigated the charges, and entered into settlement negotiations with Charley Brothers and the Steelworkers. No agreement was reached, and the Regional Director filed a formal complaint substantially incorporating respondent's charges.

On September 24, 1984, Vic's Market's, Inc. (Vic's), bought the relevant store, and the Regional Director filed a second complaint that reflected this fact. A hearing on the complaints was scheduled for December 4, 1984. However, shortly before the hearing was to begin, Vic's, Charley Brothers, the Steelworkers, and the Regional Director came to a tentative settlement agreement. The agreement called for the charged parties to take certain remedial action in return for dismissal of the complaint, but they were not required to admit that they had committed any unfair labor practice.[1] The Regional Director invited respondent to join

---

[1] The agreement provided that Vic's and Charley Brothers (1) would not assist the Steelworkers' organizing efforts or interrogate employees as to their union sympathies; (2) would not recognize the Steelworkers or give effect to the collective-bargaining agreement unless the Steelworkers became the certified employee representative; (3) would not restrain or coerce the employees; and (4) would reimburse the employees for any dues already paid to the Steelworkers. The agreement also stated that the Steelworkers (1) would not accept assistance from Vic's or Charley Brothers; (2) would not give effect to the collective-bargaining agreement unless they became the certified employee representative; (3) would not restrain or coerce the employees in any way; and (4) would mail a notice of the agreement to all employees. It was further agreed that a notice would be posted for 60 days at the store outlining the provisions of the settlement agreement. However, the agreement did not require an admission by any party that an unfair labor practice had actually occurred, nor did it provide

the agreement, but respondent refused, citing a number of purported deficiencies.[2]

Eventually, the settlement was entered into by all parties except respondent, who, as permitted by Board regulations, challenged the Regional Director's action before the General Counsel. The General Counsel determined that there was no need for an evidentiary hearing and sustained the settlement. Respondent then sought review in the United States Court of Appeals for the Third Circuit.

The Board argued that the petition for review should be dismissed on the ground that the court lacked jurisdiction to review an informal settlement that did not result in an order of the Board and that was entered into before hearings began. Alternatively, the Board argued that the settlement should be sustained. The Court of Appeals, considering itself bound by its own precedent,[3] concluded that it had jurisdiction and on the merits held that the complaint should not have been dismissed without an evidentiary hearing. 788 F. 2d 178 (1986). We granted the Board's petition for a writ

---

for a formal Board order or consent decree. Finally, the Regional Director agreed to dismiss the complaint without prejudice to reinstatement should any of the charged parties not comply with the agreement.

[2] First, respondent argued that it did not have an adequate opportunity to reach a settlement through amicable adjustment. Second, respondent contended that the 60-day posting period was too short to undo the damage already done by the improper representation; in other words respondent maintained that a fair election could not be held with so brief a posting period. Third, respondent requested special access to the store premises to enable it to compete in its organization efforts with the Steelworkers, who allegedly already had access to the store. Fourth, respondent objected to the lack of a provision for either a formal Board order or consent decree, or an admission that an unfair labor practice had occurred. Finally, respondent contended that the notice itself was ambiguous. The Regional Director amended the notice to meet respondent's concerns, but otherwise refused to alter the terms of the proposed settlement.

[3] *Leeds & Northrup Co.* v. *NLRB*, 357 F. 2d 527 (CA3 1966).

of certiorari to resolve a conflict among the Courts of Appeals.[4] 479 U. S. 1029 (1987). We now reverse.

## II

Petitioners argue that the courts of appeals have no jurisdiction under the National Labor Relations Act (NLRA) to review settlement decisions of the General Counsel that do not result in Board orders and that are entered into before the commencement of hearings on the complaint. Respondent asserts two grounds for jurisdiction. The first is that all settlements occurring after a complaint is filed must be approved by the Board. Because final orders of the Board are judicially reviewable under § 10(f) of the NLRA, 49 Stat. 455, as amended, 29 U. S. C. § 160(f), respondent maintains that the courts of appeals have jurisdiction to review settlements. Alternatively, respondent argues that because the General Counsel acts "on behalf of the Board," his or her decisions are subject to judicial review as if they were orders "of the Board." Neither of respondent's submissions persuades us.

## A

The NLRA, as originally enacted, granted the Board plenary authority over all aspects of unfair labor practice disputes: the Board controlled not only the filing of complaints, but their prosecution and adjudication. The Labor Management Relations Act, 1947 (LMRA), 61 Stat. 136, altered this structure.

One of the major goals of the LMRA was to divide the old Board's prosecutorial and adjudicatory functions between

---

[4] Compare 788 F. 2d 178 (CA3 1986) (case below) (finding that there is jurisdiction in the courts of appeals), and *International Ladies' Garment Workers Union* v. *NLRB*, 163 U. S. App. D. C. 263, 501 F. 2d 823 (1974) (same), with *Jackman* v. *NLRB*, 784 F. 2d 759 (CA6 1986) (finding no jurisdiction); cf. *Local 282, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America* v. *NLRB*, 339 F. 2d 795 (CA2 1964) (no hearing before the Board concerning settlement entered into by General Counsel).

two entities.[5]  The House passed a bill that would have created a separate agency, known as the "office of Administrator of the National Labor Relations Act," to prosecute unfair labor practice complaints.[6]  Under the House bill, the Board would have been retained to adjudicate the disputes. The Conference Committee did not go so far as to create a new agency.  It did, though, determine that the General Counsel of the Board should be independent of the Board's supervision and review.  To this end, the General Counsel is appointed by the President, with the advice and consent of the Senate, and is the "final authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints . . . and in respect of the prosecution of such complaints before the Board."[7]  29 U. S. C. § 153(d).

The methods and procedures for the resolution of unfair labor practice charges are set out in statutes and in regulations promulgated by the Board pursuant to congressional authority.  § 156.  A union, employer, or employee may bring an unfair labor practice charge to a regional office. Until such a charge is brought, the Board may take no enforcement action.  *NLRB* v. *Sears, Roebuck & Co.*, 421 U. S. 132, 156 (1975).  Once a charge is brought and investigated, the regional director may, in his discretion, dismiss it.

---

[5] See, *e. g.*, 93 Cong. Rec. 6383 (1947) (remarks of Rep. Owens regarding the importance of the separation of powers within the agency); *id.*, at 6859 (analysis of Sen. Taft).

[6] H. R. 3020, 80th Cong., 1st Sess., § 101 (1947), amending § 4 of the NLRA, as sent to the Senate.

[7] LMRA, 61 Stat. 139, § 101, amending § 3 of the NLRA.  This amendment added a new subsection (d), providing in pertinent part:

"There shall be a General Counsel of the Board who shall be appointed by the President, by and with the advice and consent of the Senate, for a term of four years.  The General Counsel of the Board . . . shall have final authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints under section 10, and in respect of the prosecution of such complaints before the Board, and shall have such other duties as the Board may prescribe or as may be provided by law."  29 U. S. C. § 153(d).

Should this occur, the charging party may appeal to the General Counsel, but not to the Board. 29 CFR § 101.6 (1987).[8] Alternatively, the regional director may enter into an "informal settlement" agreement with the charged party. Such an agreement provides that the charged party will take or refrain from taking certain action, in return for which the regional director agrees not to file a complaint. If the charging party refuses to consent to this informal agreement, it may appeal to the General Counsel, but again, there is no provision for review by the Board. § 101.7.[9]

If the regional director concludes that the charges have merit, and if no informal settlement is reached, he may issue a complaint. Once a complaint issues, it may be disposed of by withdrawal before hearing, settlement, or formal adjudication.

The regional director is authorized to withdraw a complaint on his own motion at any time before the hearing. Such a withdrawal may be appealed to the General Counsel, but no Board review is available.[10]

---

[8] Title 29 CFR § 101.6 (1987) states:

"If the complainant refuses to withdraw the charge as recommended, the Regional Director dismisses the charge. The Regional Director thereupon informs the parties of this section [sic, probably should be 'action'], together with a simple statement of the grounds therefor, and the complainant's right of appeal to the General Counsel in Washington, D. C., within 14 days. . . ."

[9] Section 101.7 provides:

"Before any complaint is issued or other formal action taken, the Regional Director affords an opportunity to all parties for the submission and consideration of facts, argument, offers of settlement, or proposals of adjustment, except where time, the nature of the proceeding, and the public interest do not permit. . . . These agreements, which are subject to the approval of the Regional Director, provide for an appeal to the General Counsel, as described in § 101.6, by a complainant who will not join in a settlement or adjustment deemed adequate by the Regional Director. . . ."

[10] Section 102.18 provides: "Any such complaint may be withdrawn before the hearing by the Regional Director on his own motion." An appeal to the General Counsel is permitted pursuant to § 102.19.

If the complaint is settled before the hearing, the disposition may take one of several forms. "Formal settlement" requires Board approval and is accompanied by the charged party's agreement to a remedial Board order and usually consent to the entry of an enforcement order in the court of appeals. § 101.9(b)(1).[11] "Informal settlement" is similar to the precomplaint settlement already discussed. The only difference is that rather than refraining from filing a complaint, the regional director dismisses the complaint without prejudice to reinstatement should the charged party not fulfill its part of the agreement. § 101.9(b)(2).[12]

Because a Board order is part of all formal settlements, Board approval is required before such an agreement may be executed. The applicable regulations expressly allow an opportunity for a nonconsenting party to appeal to the General Counsel, and from there to the Board. §§ 101.9(c)(1) and (2).[13] Ultimately, judicial review of the Board order is

---

[11] Section 101.9 concerns settlements made after a complaint is filed. Subsection (b)(1), states:

"After the issuance of a complaint, the Agency favors a formal settlement agreement, which is subject to the approval of the Board in Washington, DC. In such an agreement, the parties agree to waive their right to hearing and agree further that the Board may issue an order requiring the respondent to take action appropriate to the terms of the settlement. Ordinarily the formal settlement agreement also contains the respondent's consent to the Board's application for the entry of a judgment by the appropriate circuit court of appeals enforcing the Board's order."

[12] Section 101.9(b)(2) states:

"In some cases, however, the Regional Director, who has authority to withdraw the complaint before the hearing § 102.18) [sic], may conclude that an informal settlement agreement of the type described in § 101.7 is appropriate. Such agreement is not subject to approval by the Board and does not provide for a Board order. It provides for the withdrawal of the complaint."

[13] Sections 101.9(c)(1) and (2) read:

"(1) If after issuance of complaint but before opening of the hearing, the charging party will not join in a settlement tentatively agreed upon by the Regional Director, the respondent, and any other parties whose consent may be required, the Regional Director serves a copy of the proposed set-

available. 29 U. S. C. § 160(f). If the prehearing settlement is informal, an appeal is permitted to the General Counsel by a nonjoining party, but there is no provision for Board review. 29 CFR § 101.9(c)(3) (1987).[14]

Once the hearing on the complaint begins, the Board's regulations do not permit the General Counsel to enter into an unreviewable settlement agreement, even if it is "informal." Rather, a nonconsenting party may challenge the settlement before the administrative law judge, and an appeal is available from the judge's determination to the Board.[15] Judicial review is authorized from the Board's decision. 29 U. S. C. § 160(f).

---

tlement agreement on the charging party with a brief written statement of the reasons for proposing its approval. . . .

"(2) If the settlement agreement approved by the Regional Director is a formal one, providing for the entry of a Board order, the settlement agreement . . . [is] submitted to Washington, D. C., where [it is] reviewed by the General Counsel. If the General Counsel decides to approve the settlement agreement, the charging party is so informed and the agreement and accompanying documents are submitted to the Board, upon whose approval the settlement is contingent. . . ."

[14] Section 101.9(c)(3) states: "If the settlement agreement approved by the Regional Director is an informal one, providing for the withdrawal of the complaint, the charging party may appeal the Regional Director's action to the General Counsel . . . ."

[15] Section 101.9(d) provides in relevant part:

"(1) If the settlement occurs after the opening of the hearing and before issuance of the administrative law judge's decision and there is . . . [a settlement proposal and if] any party will not join in the settlement agreed to by the other parties, the administrative law judge will give such party an opportunity to state on the record or in writing its reasons for opposing the settlement.

"(2) If the administrative law judge decides to accept or reject the proposed settlement, any party aggrieved by such ruling may ask for leave to appeal to the Board as provided in § 102.26."

(Section 102.26 provides for interlocutory appeals to the Board, which are discretionary. Petitioners have not suggested that an order of the administrative law judge *accepting* a settlement would not always be subject to Board review.)

Finally, the complaint may be disposed of by formal adjudication. The procedures for such determinations are provided by statute. Once a complaint issues, the charged party has the right to answer and the right to a hearing. If the Board finds, based on a preponderance of the testimony, that the charged party engaged in an unfair labor practice, it is empowered to issue a cease-and-desist order and other appropriate relief. Conversely, it must dismiss the complaint if it finds that no such practice occurred.[16] Any party, including the charging party,[17] aggrieved by an order of the Board granting or denying in whole or in part the relief sought may obtain review of the Board's final order in the court of appeals. 29 U. S. C. § 160(f).[18]

The dispute in the case before us is a narrow one. The parties agree that the General Counsel's approval of a determination not to file an unfair labor practice complaint is not subject to judicial review, whether or not it is the result of an

---

[16] Section 10(c) of the NLRA, as set forth in 29 U. S. C. § 160(c), reads in relevant part:

"If upon the preponderance of the testimony taken the Board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue . . . an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action . . . as will effectuate the policies of this [Act] . . . . If upon the preponderance of the testimony taken the Board shall not be of the opinion that the person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue an order dismissing the said complaint. . . ."

[17] Automobile Workers v. Scofield, 382 U. S. 205 (1965).

[18] Section 10(f) of the NLRA, as set forth in 29 U. S. C. § 160(f), provides in relevant part:

"Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business, or in the United States Court of Appeals for the District of Columbia . . . ."

informal settlement. See *Sears, Roebuck & Co.*, 421 U. S., at 148; *Vaca* v. *Sipes*, 386 U. S. 171, 182 (1967). The parties also agree that any settlement that ultimately results in Board approval is subject to judicial review, even if the settlement is informal but entered into after the hearing commenced. The sole dispute is whether a postcomplaint, prehearing informal settlement is subject to judicial review.

## B

We first address respondent's argument that the regulations just described, which permit the General Counsel to determine the validity of a postcomplaint informal settlement, but do not provide for an appeal to the Board, are inconsistent with the NLRA. Essentially, this is an argument that respondent was entitled to a Board order subject to judicial review under 29 U. S. C. § 160(f).[19]

We review the validity of the relevant regulations, promulgated pursuant to congressional authority, under the standards prescribed in *INS* v. *Cardoza-Fonseca*, 480 U. S. 421 (1987). On a pure question of statutory construction, our first job is to try to determine congressional intent, using "traditional tools of statutory construction." If we can do so, then that interpretation must be given effect, and the regulations at issue must be fully consistent with it. *Id.*, at 446–448. See also *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 842–843, and n. 9 (1984). However, where "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.*, at 843. Under this principle, we have traditionally accorded the Board deference with regard to its interpretation of the NLRA as long as its interpretation is rational and consistent with the statute. See, *e. g.*, *Fall River Dyeing & Finishing Corp.* v. *NLRB*, 482 U. S. 27, 42 (1987); *Ford Motor Co.* v. *NLRB*, 441

---

[19] See n. 18, *supra*.

U. S. 488, 495, 497 (1979); *Beth Israel Hospital* v. *NLRB*, 437 U. S. 483, 501 (1978).[20]

The words, structure, and history of the LMRA amendments to the NLRA clearly reveal that Congress intended to differentiate between the General Counsel's and the Board's "final authority" along a prosecutorial versus adjudicatory line. Section 3(d) of the NLRA provides that the General Counsel has "final authority" regarding the filing, investigation, and "prosecution" of unfair labor practice complaints. Conversely, when the authority of the Board is discussed (with regard to unfair labor practice complaints), it is in the context of the *adjudication* of complaints. Specifically, § 10 of the Act refers to the Board and the procedures it must follow to decide unfair labor practice cases.

The history of the LMRA also reflects this dichotomy. The House Conference Report on the LMRA states: "The conference agreement does not make provision for an independent agency to exercise the investigating and prosecuting functions under the act, but does provide that there shall be a General Counsel of the Board . . . [who] is to have the final authority to act in the name of, but independently of any direction, control, or review by, the Board in respect of the investigation of charges and the issuance of complaints of

---

[20] We also consider the consistency with which an agency interpretation has been applied, and whether the interpretation was contemporaneous with the enactment of the statute being construed. *INS* v. *Cardoza-Fonseca*, 480 U. S. 421, 446, n. 30 (1987); *General Electric Co.* v. *Gilbert*, 429 U. S. 125, 142–143 (1976); *NLRB* v. *Bell Aerospace Co.*, 416 U. S. 267, 275 (1974). Since 1948 the agency's regulations have provided for Board approval only of settlements involving a Board order. See 29 CFR § 101.9(b) (1949) ("All settlement stipulations which provide for the entry of an order by the Board are subject to the approval of the Board in Washington"); 13 Fed. Reg. 4871 (1948). Further, the regional director has had the authority since 1947 to withdraw a complaint at any time before the hearing begins, on his own motion. 29 CFR § 102.18 (1949); 12 Fed. Reg. 5667 (1947). In 1967, the regulations were amended to substantially their present form. 32 Fed. Reg. 9547 (1967).

unfair labor practices, *and in respect of the prosecution of such complaints before the Board.*" H. R. Conf. Rep. No. 510, 80th Cong., 1st Sess., 37 (1947) (emphasis added). Similarly, a summary submitted to the Senate detailing the Conference Committee compromise reads: "Further [the LMRA] *recognizes the principle of separating judicial and prosecuting functions* without going to the extent of establishing a completely independent agency. It accomplishes separation of functions within the framework of the existing agency by establishing a new statutory office, that is, a general counsel of the Board . . . ." 93 Cong. Rec. 6442 (1947) (emphasis added). The legislative debates further support this division. See, *e. g., id.,* at 3423–3424 (1947) (remarks of Rep. Hartley); *id.,* at 6383 (remarks of Rep. Owens). Finally, the contemporaneous agency interpretation of the LMRA emphasized the prosecutorial/adjudicatory dichotomy. See 13 Fed. Reg. 654 (1948).

In light of the foregoing, the general congressional framework, dividing the final authority of the General Counsel and the Board along a prosecutorial and adjudicatory line, is easy to discern. Some agency decisions can be said with certainty to fall on one side or the other of this line. For example, as already discussed, decisions whether to file a complaint are prosecutorial. In contrast, the resolution of contested unfair labor practice cases is adjudicatory. But between these extremes are cases that might fairly be said to fall on either side of the division. Our task, under *Cardoza-Fonseca* and *Chevron,* is not judicially to categorize each agency determination, but rather to decide whether the agency's regulatory placement is permissible.

Respondent would have us hold that after a complaint is filed all dispositions can *only* be deemed adjudicatory. It is true that the filing of a complaint is the necessary first step to trigger the Board's adjudicatory authority. However, until a hearing is held the Board has taken no action; no *adjudication* has yet taken place. We hold that it is a reasonable con-

struction of the NLRA to find that until the hearing begins, settlement or dismissal determinations are prosecutorial.[21]

Moreover, we fail to see why the General Counsel should have the concededly unreviewable discretion to file a complaint, but not the same discretion to withdraw the complaint before hearing if further investigation discloses that the case is too weak to prosecute. See *International Assn. of Machinists & Aerospace Workers* v. *Lubbers*, 681 F. 2d 598, 604 (CA9 1982), cert. denied, 459 U. S. 1201 (1983); *George Banta Co.* v. *NLRB*, 626 F. 2d 354, 356–357 (CA4 1980), cert. denied, 449 U. S. 1080 (1981); *Local 282, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America* v. *NLRB*, 339 F. 2d 795, 799 (CA2 1964); cf. *Cuyahoga Valley R. Co.* v. *Transportation Union*, 474 U. S. 3 (1985) (the Secretary of Labor's decision to dismiss an Occupational Safety and Health Act complaint is not subject to review by the Occupational Safety and Health Review Commission). The General Counsel's unreviewable discretion to file and withdraw a complaint, in turn, logically supports a reading that he or she must also have final authority to dismiss a complaint in favor of an informal settlement, at least before a hearing begins.

But respondent contends that the LMRA's legislative history makes clear Congress' understanding that the Board would review all dismissals once a complaint is filed. Our examination of the legislative history discloses no such support for respondent's argument. Indeed, we find that the legislative history supports petitioners' position.

Respondent asserts that at the time the LMRA was passed, in 1947, the practice of the Board was to delegate to

---

[21] Both parties attempt to analogize the role of the General Counsel in an unfair labor practice setting to other contexts, specifically to a criminal prosecution or class action. We find these analogies of little aid. We have previously noted that the comparison between the General Counsel and a criminal prosecutor is "far from perfect." *NLRB* v. *Sears, Roebuck & Co.*, 421 U. S. 132, 156, n. 22 (1975). The same observation is true for class actions. The NLRA's division of authority must, at least in this case, be analyzed on its own terms.

an "anonymous committee" the resolution of appeals from determinations by regional directors not to file complaints. Respondent further argues that once a complaint was filed, *any* final disposition was subject to Board approval. The conclusion respondent would have us draw from this is that Congress intended only to replace the "anonymous committee" with the General Counsel, and that the authority that the Board had retained prior to 1947 survived and was carried forward in the LMRA amendments to the NLRA.[22]

This inference is too strained to withstand scrutiny. It is clear of course that Congress intended to place final authority regarding the filing of complaints in the General Counsel. But it is equally clear that Congress intended the scope of the General Counsel's authority to be far broader than respondent suggests. Congress intended that the General Counsel should not only resolve appeals regarding the filing of complaints, but that he or she should be the "final authority" concerning the "prosecution" of complaints as well, a function not performed by the "anonymous committee" prior to 1947. We repeat that Congress intended to create an officer independent of the Board to handle *prosecutions*, not merely the filing of complaints.

Moreover, the silence of the legislative history regarding settlements does not suggest that Congress was carrying forward the prior settlement structure. For Congress was

---

[22] In support of this theory, respondent points to a statement by Senator Taft:

"Presumably, under the conference agreement such appeals would be routed to the General Counsel's office rather than to the Board. The assumption that the Board itself presently reviews these appeals, however, is utterly erroneous. According to the testimony of the chairman of the Board these appeals are considered by an anonymous committee of subordinate employees. What the conference amendment does is simply to transfer this 'vast and unreviewable power' from this anonymous little group to a statutory officer responsible to the President and to the Congress." 93 Cong. Rec. 6859 (1947).

Respondent also notes that the legislative history is silent concerning the procedure for entering into settlements.

aware that settlements constitute the "lifeblood" of the administrative process, especially in labor relations.[23] Given their importance, we cannot attribute to Congress an intention to deny the Board the usual flexibility accorded an agency in interpreting its authorizing statute and in developing new regulations to meet changing needs.[24]

In short, the Board's regulations are consistent with amended NLRA. Respondent was not entitled to Board review of the settlement.

C

Alternatively, respondent argues that because the General Counsel acts "on behalf of the Board" his or her final determinations are reviewable under the NLRA as orders "of the Board." We find this argument, too, unpersuasive.

The plain language cited by respondent reflects that the General Counsel acts *"on behalf of"* the Board. 29 U. S. C. § 153(d).[25] Clearly this is not the same as an act "of the Board" itself. 29 U. S. C. § 160(f).[26]

Further, the structure of the Act, far from supporting respondent, leads inescapably to the conclusion that Congress distinguished orders of the General Counsel from Board orders. The statute describing the organization of the agency,

---

[23] See Attorney General's Committee on Administrative Procedure, Administrative Procedure in Government Agencies, Final Report, S. Doc. No. 8, 77th Cong., 1st Sess., 35 (1941).

[24] The precise form of settlement at issue in this case was not prevalent prior to the LMRA's passage in 1947. At that time, informal settlements were usually entered into only before a complaint was filed. Once a complaint was filed, it could not be withdrawn without Board approval, and the Board only approved a settlement agreement if it contained a stipulation for the entry of a remedial Board order and entry of a consent decree to court of appeals enforcement, "or compelling reasons appear[ed] for its failure to do so." Attorney General's Committee on Administrative Procedure, Administrative Procedure in Government Agencies: National Labor Relations Board, S. Doc. No. 10, 77th Cong., 1st Sess., pt. 5, pp. 7–8 (1941).

[25] See n. 7, *supra.*

[26] See n. 18, *supra.*

in which the "on behalf of the Board" language appears, differentiates between the two independent branches. 29 U. S. C. § 153. The structure of § 10 of the NLRA (29 U. S. C. § 160) emphasizes the distinction. Section 10 specifies the procedure for *adjudicating* unfair labor practice charges. Subsection 10(f) provides that final decisions "of the Board" shall be judicially reviewable, and, in the context of the entire section, discloses Congress' decision to authorize review of *adjudications*, not of *prosecutions*. Fairly read, this may encompass any Board adjudication resolving an unfair labor practice complaint, whether by final order, consent decree, or settlement. But it plainly cannot be read to provide for judicial review of the General Counsel's prosecutorial function.

The history of the Act confirms the distinction between orders of the General Counsel and Board orders. In the House bill, the General Counsel was styled the "Administrator of the National Labor Relations Act," and headed a separate agency. The Conference Committee decided to place the General Counsel within the agency, but to make the office independent of the Board's authority. The Committee added the language "on behalf of the Board" to make it clear that the General Counsel acted within the agency, not to imply that the acts of the General Counsel would be considered acts of the Board.[27]

---

[27] See 93 Cong. Rec. 6383 (1947) (remarks of Reps. Owens, Hartley, and MacKinnon) (emphasis added):

"Mr. OWENS. I believe that one of the most important portions of this bill is the division of powers; that is, the division of the functions, the investigation, the prosecution, the complaints, and the judicial end. The gentleman mentioned that the general counsel would be absolutely independent.

"In the language [the bill] constantly refers to the Board.

. . . . .

"It is my understanding that the conference is saying to the House at this time that those different sections, where they mention the Board, mean that it is the general counsel who shall have the power to proceed

Finally, since respondent concedes that the General Counsel's decision not to file a complaint is not reviewable under § 10(f), we perceive no merit or logic in the argument that a settlement decision of the General Counsel may be.

Again, the language, structure, and history of the NLRA, as amended, clearly differentiate between "prosecutorial" determinations, to be made solely by the General Counsel and which are not subject to review under the Act, and "adjudicatory" decisions, to be made by the Board and which are subject to judicial review. As the decision in this case was "prosecutorial," it cannot be judicially reviewed under the NLRA.

## III

Respondent argues that if the NLRA provides no judicial review of "prosecutorial" determinations, they may be reviewed under the Administrative Procedure Act (APA) as final agency actions "for which there is no other adequate remedy in a court." 5 U. S. C. § 704. It is true that the General Counsel's decision was a "final" action, and that there is no other adequate remedy in a court. But review under the APA is unavailable of actions specified in 5 U. S. C. § 701(a), that is, (1) where "statutes preclude judicial review"; or (2) where "agency action is committed to agency discretion by law." Subsection (1) applies in this case.

---

with the investigation, with the complaint, and shall have complete power over the attorneys who are prosecuting; that the Board shall not control him or have the right of review in any way. Is that correct?

"Mr. HARTLEY. The gentleman's opinion is absolutely correct. The reference to the Board was necessary *because, in order to have this man independent of the Board, we had to use the term 'Board.'* Otherwise we would have had to set up a completely independent agency. . . . *He acts on behalf of the Board but completely independent of the Board.*

"Mr. MACKINNON. But while he is completely independent of the Board, he is authorized insofar as his duties are concerned, *to act in the name of the Board?*

"Mr. HARTLEY. *Yes; in the name of the Board.*"

The statutory preclusion of judicial review must be demonstrated clearly and convincingly. *Southern R. Co.* v. *Seaboard Allied Milling Corp.*, 442 U. S. 444, 462 (1979); *Dunlop* v. *Bachowski*, 421 U. S. 560, 567 (1975). In the absence here of statutory language expressly precluding APA review, the Court must examine the structure and history of the statute to determine whether the requisite congressional intent to bar judicial review is clearly established.

The NLRA leaves no doubt that it is meant to be, and is, a comprehensive statute concerning the disposition and review of the merits of unfair labor practice charges. In particular, § 10 exhaustively sets out the stages through which such charges may pass, from the filing of a complaint, to a Board determination, and to judicial enforcement and review. Moreover, in the entire NLRA, judicial review is expressly provided only in respect of Board orders. We have already determined, *supra*, at 130, that Congress purposely excluded prosecutorial decisions from this review. We proceed to demonstrate why it would be illogical in the extreme to hold that Congress did so only to permit review under the APA.[28]

To allow judicial review through the APA of the General Counsel's settlement determinations would run directly counter to the structure of the NLRA. Appeals from final orders or dispositions of the Board are expressly directed to the courts of appeals. Respondent nevertheless urges that the statute should be read to allow an APA suit, brought in the *district* court, to review final agency orders that are not adjudications. Such review would involve lengthy judicial

---

[28] Our conclusion is bolstered by the observation that nowhere in the legislative history of the LMRA is the availability of APA review adverted to, despite reference to the APA in other contexts. For example, opponents of the LMRA amendment to the NLRA creating an independent General Counsel cited to the APA as providing the best division between prosecutorial and adjudicatory functions within an agency. 93 Cong. Rec. 6455 (1947) (remarks of Sen. Morse); *id.*, at 7487 (President Truman's veto message); *id.*, at 6859 (analysis of Sen. Taft rebutting these attacks).

proceedings in precisely the area where Congress was convinced that speed of resolution is most necessary. This case provides a good illustration of what Congress set out to avoid. Charges were filed by respondent in August 1984. By January 1985 the settlement had been reached and all administrative review was exhausted. However, the court proceedings took almost 15 months.[29]

This sort of delay, unavoidable in the judicial setting, is untenable in the settlement context, for until the court ruled the parties could not know whether their settlement agreement was valid. In future cases, a charged party would have an incentive not to carry out its part of the bargain while judicial review is pending for fear that the settlement might be invalidated. Obviously, the willingness of charged parties to resolve unfair labor practice charges quickly and expeditiously by way of an informal settlement after a complaint is filed would be severely constrained if APA review were allowed.

The resulting consequences for the agency and the enforcement of the Act could be most serious. In 1983 almost one-third of all unfair labor practice charges brought (excluding those terminated through voluntary withdrawal by the charging party or outright dismissal of the charges) were disposed of by way of an informal settlement reached after a complaint was filed, but before a hearing began.[30] This hazard to the functioning of the "lifeblood" of the administrative process could certainly not have been the congressional intention.

Finally, APA review of these settlements would inevitably require the federal courts, in the first adjudicatory instance, to examine the merits of unfair labor practice charges.

---

[29] The proceedings would have taken even longer had the action been brought in the District Court and then appealed to the Court of Appeals, as would happen under the APA.

[30] 48 NLRB Ann. Rep. 183 (Table 7) (1983). The number of cases disposed of in this manner was 3,803.

However, Congress has made plain its unequivocal desire that, absent statutory direction to the contrary, such examinations be made first by the Board, or not at all. At least in the context of this statute, we are left with no doubt that Congress intended the right of judicial review on the merits of an unfair labor practice charge to be had only through the express provisions of the NLRA.

Given the comprehensive nature of the NLRA with regard to unfair labor practice charges, and the absurd results of allowing an APA action to be brought where there is no judicial review provided in the Act, we conclude that the exception defined in 5 U. S. C. § 701(a)(1) bars review here.[31]

## IV

We conclude that the Court of Appeals had no jurisdiction to entertain this action under either the NLRA or the APA. Consequently, we need not determine whether an evidentiary hearing should have been ordered. We reverse the judgment of the Court of Appeals and remand with instructions to dismiss the cause for want of subject-matter jurisdiction.

*It is so ordered.*

JUSTICE SCALIA, with whom THE CHIEF JUSTICE, JUSTICE WHITE, and JUSTICE O'CONNOR join, concurring.

I join the Court's opinion, and write separately only to note that our decision demonstrates the continuing and unchanged vitality of the test for judicial review of agency determinations of law set forth in *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 842–843 (1984). Some courts have mistakenly concluded otherwise, on the basis of dicta in *INS* v. *Cardoza-Fonseca*, 480 U. S. 421, 446–448 (1987). See, *e. g.*, *Union of Concerned Scientists* v.

---

[31] Because we find APA review precluded by statute, we need not address petitioners' alternative argument that 5 U. S. C. § 701(a)(2) (acts committed to agency discretion) also bars review.

*NRC*, 266 U. S. App. D. C. 381, 386, 824 F. 2d 108, 113 (1987); *International Union, United Automobile, Aerospace and Agricultural Implement Workers* v. *Brock*, 259 U. S. App. D. C. 457, 460–461, 816 F. 2d 761, 764–765 (1987); *Adams House Health Care* v. *Heckler*, 817 F. 2d 587, 593–594 (CA9 1987). If the dicta of *Cardoza-Fonseca*, as opposed to its expressed adherence to *Chevron*, were to be applied here, surely the question whether dismissal of complaints requires Board approval and thus qualifies for judicial review under 29 U. S. C. § 160(f) would be "a pure question of statutory construction" rather than the application of a "standar[d] to a particular set of facts," as to which "the courts must respect the interpretation of the agency," 480 U. S., at 446, 448. Were we to follow those dicta, therefore, we would be deciding this issue conclusively and authoritatively, rather than merely "decid[ing] whether the agency's regulatory placement is permissible," *ante,* at 125. The same would be true, moreover, of the many other decisions alluded to by the Court in which "we have traditionally accorded the Board deference with regard to its interpretation of the NLRA," *ante*, at 123. Those cases, and this, are decided correctly only because "the statute is silent or ambiguous" with respect to an issue relevant to the agency's administration of the law committed to its charge—which is the test for deference set forth in *Chevron*.