NATIONAL ASSOCIATION OF CASU-ALTY AND SURETY AGENTS, et al., Petitioners,

v.

BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM, Respondent,

MNC Financial, Inc., Intervenor.

NATIONAL ASSOCIATION OF CASU-ALTY AND SURETY AGENTS, et al., Petitioners,

v.

BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM, Respondent,

Sovran Financial Corp., Intervenor.

Nos. 87–1354, 87–1355.

United States Court of Appeals, District of Columbia Circuit.

Dec. 2, 1988.

Jonathan B. Sallet, David G. Webbert and Lisa D. Burget, Washington, D.C., were on the suggestion for rehearing.

## ON PETITIONERS' SUGGESTION FOR REHEARING EN BANC.

Before WALD,* Chief Judge, ROBINSON,* MIKVA, EDWARDS, RUTH BADER GINSBURG, STARR, SILBERMAN, BUCKLEY, WILLIAMS, D.H. GINSBURG,* and SENTELLE, Circuit Judges.

### ORDER

PER CURIAM.

Petitioners' suggestion for rehearing *en banc* has been circulated to the full Court. The taking of a vote thereon was requested. Thereafter, a majority of the judges of the Court in regular active service did not vote in favor of the suggestion. Upon consideration of the foregoing, it is

ORDERED, by the Court *en banc*, that the suggestion is denied.

A separate statement of Circuit Judge SILBERMAN, in which Circuit Judge RUTH BADER GINSBURG joins, is attached.

SILBERMAN, Circuit Judge, with whom RUTH BADER GINSBURG, Circuit Judge, joins, concurring in the denial of rehearing en banc:

Upon further review of the Bank Holding Company Act ("BHCA" or "Act"), we are even more convinced than we were when the panel opinion was issued that 12 U.S.C. § 1843 does not unambiguously yield the "perfectly clear" result petitioners suggest. Far from discerning the "explicit statement" that petitioners perceive in Congress' use of the phrase "the bank holding company" in section 4(c)(8)(D) of the Act, 12 U.S.C. § 1843(c)(8)(D), we believe a thorough reexamination of the Act indicates that petitioners' reading of the statute may not even be the more natural interpretation of Congress' language.

Petitioners' argument depends for its force almost entirely on the assumption that "*the* bank holding company" in section 4(c)(8)(D) (emphasis added) must necessarily refer all the way back to the bank holding company identified in section 4(a) ("No bank holding company . . ."), the latter of which is the putative acquiring bank holding company. Nevertheless, it is just as likely (perhaps more likely) strictly as a matter of word parsing that Congress intended it to refer only as far back as to the phrase "a bank holding company"[1] used in the opening passage of section 4(c)(8), which section speaks in terms of the acquired or target company. Of course, if that is so, then the premise of petitioners' construction evaporates since "the" actually equals "a". In short, we do not think there is any particular linguistic reason to read "the bank holding company" in 4(c)(8)(D) to refer to the *same* bank holding company identified in 4(a).

Indeed, as the Board pointed out, in subsection D itself Congress used the term "*same* bank holding company" (emphasis added) when wishing to be more specific, and a close reading of that language casts doubt not only on whether petitioners' reading of the statute is *compelled*, but also on whether it is a reasonable construction at all. Subsection D limits the use of grandfather rights by restricting insurance sales to the state in which the bank holding company has its principal place of business (and adjoining states). Significantly, it provides that "new locations" must be those "of the *same* bank holding company . . . with respect to which insurance was sold" in 1982. 12 U.S.C. § 1843(c)(8)(D) (emphasis added). That language surely implies on its face that nongrandfathered bank holding companies can merge with or acquire grandfathered bank holding companies without extinguishing grandfather rights.

Furthermore, if petitioners' reading of "the bank holding company" in subsection D were correct, it is unclear to us why Congress would have continued with the phrase "*or* any of its subsidiaries." *Id.* (emphasis added). That additional phrase

---

\* *Chief Judge Wald and Circuit Judges Robinson and D.H. Ginsburg did not participate in this matter.*

1. Also referred to as "*any* company." 12 U.S.C. § 1843(c)(8) (emphasis added).

suggests that a subsidiary can be grandfathered without conferring grandfather status on the parent bank holding company—which, of course, is inconsistent with petitioners' reasoning. The words could well have been designed to convey the notion that if a nongrandfathered bank holding company purchases either a grandfathered bank holding company or a grandfathered subsidiary and maintains either entity as its own subsidiary (which is what happened in both of the cases before us) such acquisitions are well within the plain language of Exemption D even if the bank holding company cannot independently qualify.

Were we to accept petitioners' approach toward the ascertainment of "plain meaning," a myopic focus on Congress' selection of a definite or indefinite article could occasion results that, at the very least, would be unexpected. For instance, Congress' use of "a" rather than "the" in Exemption G would require, presumably, reversal of the Board's construction of that provision as well. The Board has held that Exemption G rights, which are more extensive (and therefore more to be feared by the petitioners), are *not* transferable. Yet, Exemption G shelters insurance activity:

> where the activity is performed, or shares of the company involved are owned, directly or indirectly, by *a* bank holding company which is registered with the Board of Governors of the Federal Reserve System and which, prior to January 1, 1971, was engaged, directly or indirectly, in insurance agency activities as a consequence of approval by the Board prior to January 1, 1971.

12 U.S.C. § 1843(c)(8)(G) (emphasis added). Thus, under petitioners' narrow, mechanical approach, Exemption G would not bear the Board's sound and eminently reasonable construction either.

The provisions of the Bank Holding Company Act with which we have wrestled are notoriously difficult to understand because the draftsmen at different times and in different clauses seemed to focus their attention alternatively and sometimes simultaneously on the initiating or acquiring company, on the one hand, and the acquired companies, on the other, without being careful to avoid confusion. Perhaps for that reason, Congress in section 4(c)(8) specifically provided the Board authority to "differentiate between activities commenced *de novo* and activities commenced by acquisition, in whole or in part, of a going concern." *Id.* § 1843(c)(8). While the Board has drawn a somewhat different distinction in the cases before us, this passage supports the Board's belief that when Congress wrote Exemption D they were focusing on the creation of grandfather rights and not really thinking about what would happen to those rights if the grandfathered company were acquired. If they had been, Congress arguably would have considered, among other things, the potentially different treatment to be accorded to commencement of insurance activities via acquisition and commencement via merger.

We agree with petitioners' account of the judiciary's role in reviewing agency constructions of statutory mandates; specifically, we. fully recognize that the court's first step under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984), "is to try to determine congressional intent, using 'traditional tools of statutory construction.'" *NLRB v. United Food & Commercial Workers Union,* 108 S.Ct. 413, 421 (1987) (quoting *INS v. Cardoza–Fonseca,* 107 S.Ct. 1207, 1221 (1987)). We are aware, however, of no canon of statutory interpretation that requires us to ignore the overall structure of a congressional scheme and instead occupy ourselves exclusively with only one of many relevant statutory passages. *See, e.g., K Mart Corp. v. Cartier, Inc.,* 108 S.Ct. 1811, 1817 (1988); *id.* at 1821–25 (Brennan, J., concurring and dissenting). Because our reexamination of both Exemption D and the broader reaches of the BHCA reinforces our view that the Act bears ambiguously on the issue before us, and because we continue to believe the Board's construction of the Act's confusing mandate is reasonable, we concur in the denial of rehearing *en banc.*