**TUALATIN ELECTRIC, INC., Petitioner, Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent, Cross–Petitioner,**

and

**International Brotherhood of Electrical Workers, Local Union No. 48, Intervenor.**

Nos. 93–70775, 93–70843.

United States Court of Appeals, Ninth Circuit.

Submitted March 4, 1996.*

Decided May 29, 1996.

---

* The panel unanimously finds this case suitable for submission on the record and briefs without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34–4.

Thomas M. Triplett, Schwabe, Williamson & Wyatt, Portland, Oregon, for petitioner, cross-respondent.

David A. Fleischer, Senior Attorney, and Aileen A. Armstrong, Deputy Associate General Counsel, National Labor Relations Board, Washington, D.C., for respondent, cross-petitioner.

Norman D. Malbin, Portland, Oregon, for intervenor.

Before: REINHARDT, KOZINSKI, and FERNANDEZ, Circuit Judges.

PER CURIAM:

Tualatin Electric, Inc. (Tualatin) seeks review of the National Labor Relations Board's (NLRB) affirmance and adoption of an Administrative Law Judge's finding that the Regional Director for Region 19 of the Board appropriately set aside an informal settlement agreement. The NLRB and intervenor International Brotherhood of Electrical Workers, Local No. 48 (Union) cross-petition for enforcement of the Board's order and decision holding that Tualatin violated sections 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. § 158. We grant the petition for enforcement.

## I. Background

Tualatin is an electrical contractor in the state of Oregon, which worked on a retail store construction project in Wilsonville, Oregon named "Project Thunder." Tualatin's employees are not represented by any labor organization.

Edward Campbell, a member of the Union, agreed to "salt" a job with Tualatin.[1] Camp-

---

1. "Salting a job" is obtaining employment with a non-union employer and then organizing its employees for the union. The term may be derived from the phrase "salting a mine," which is the

bell obtained employment with Tualatin at Project Thunder. As an employee of the Union and Tualatin, Campbell attempted to generate interest and enthusiasm for the Union and to provide the Union with names and telephone numbers of workers. In return, the union paid him supplemental wages and benefits to bring his compensation to the amount he would have received had he been working for a union employer.

Campbell began work at Tualatin as a journeyman electrician on July 6, 1992. At Project Thunder, Campbell attempted to organize Tualatin's workers before and after work and during breaks. His organizational efforts were brought to the attention of his supervisor and he was subsequently discharged.

The Union filed an unfair labor practice charge on July 20, 1992 against Tualatin. A month later, the NLRB's Regional Director for Region 19 approved an informal settlement agreement between Tualatin and the Union, requiring, among other remedies, that Tualatin offer Campbell "reinstatement." [2]

Campbell reported to Project Thunder on August 24, 1992, but was immediately sent to work on Tualatin's Wal–Mart project in Salem, Oregon. Campbell quit working on the Wal–Mart project after two days because the Union objected to his reassignment to the Wal–Mart project on the ground that it did not constitute adequate reinstatement under the terms of the settlement agreement.

On September 29, 1992, the Regional Director vacated and set aside the settlement agreement because Tualatin had failed to comply with the terms of the agreement and issued a complaint against Tualatin. The Administrative Law Judge (ALJ) heard the case shortly thereafter. The complaint alleged 1) that Tualatin's project supervisor threatened employees with discharge if they engaged in union activities, in violation of section 8(a)(1) of the National Labor Relations Act, 2) that Tualatin discharged Campbell because of his union activities, in violation of sections 8(a)(1) and (3) of the Act, and 3) that Tualatin failed to comply with the terms of the then-vacated informal settlement agreement. Tualatin denied the allegations and asserted that the settlement agreement had been improperly set aside and should be reinstated. The ALJ found that Tualatin violated section 8(a)(1) of the National Labor Relations Act by coercively interrogating employees about their union activities and threatening them with discharge. The ALJ also found that Campbell was an "employee" under the Act even though the Union was paying him to organize Tualatin's workers [3] and that Tualatin's decision to discharge Campbell was motivated by Campbell's union activities, in violation of sections 8(a)(1) and (3) of the Act. Finally, the ALJ found that the settlement agreement was properly set aside because Campbell's reinstatement to the Wal–Mart project did not constitute sufficient compliance with the agreement given that his job at Project Thunder was still available.

The NLRB adopted the ALJ's decision and order, *Tualatin Electric Inc.*, 312 NLRB 129, 1993 WL 361183 (1993), awarding Campbell back pay, requiring Tualatin to expunge the discharge from Campbell's employment records, prohibiting Tualatin from harassing its employees about their union status, and ordering Tualatin to reinstate Campbell at the Project Thunder site with back pay.[4]

## II.  Analysis

We have jurisdiction pursuant to 29 U.S.C. § 160(e) & (f) to review the Regional Di-

---

artificial introduction of metal or ore into a mine by subterfuge to create the false impression that the material was naturally occurring.

**2.**  The settlement agreement provided that Tualatin would "offer reinstatement to employee Ed Campbell" without specifying the particular location to which he was to be reinstated.

**3.**  Following its appeal to this court, Tualatin withdrew its argument that a company worker being paid to help a union organize the company

is not an "employee" under the National Labor Relations Act in light of the Supreme Court's decision in *NLRB v. Town & Country Electric Inc.*, —— U.S. ——, 116 S.Ct. 450, 133 L.Ed.2d 371 (1995), which rejected that argument.

**4.**  If the Project Thunder site no longer existed, Tualatin was ordered to reinstate Campbell to a substantially equivalent position to which he would have been transferred had he not been unlawfully terminated.

rector's decision to set aside an informal settlement where, as here, that decision has been affirmed by the Board. *See, e.g., City Cab Co. of Orlando v. NLRB*, 787 F.2d 1475, 1477 (11th Cir.), *cert. denied*, 479 U.S. 828, 107 S.Ct. 108, 93 L.Ed.2d 57 (1986).[5]

Tualatin challenges the ALJ's and the NLRB's decisions on a single ground: it contends that the Regional Director improperly set aside the settlement agreement, arguing that it did not violate the reinstatement provision. Tualatin contends that Campbell voluntarily accepted "substantially equivalent" employment on another project. Tualatin further contends that it should have the right to select the location where its employees are to be reinstated because the construction industry has "no fixed, immutable location where an employee reports to work to perform services." The NLRB seeks enforcement of its decision and order. Tualatin concedes that substantial evidence supports the NLRB's finding that it violated section 8(a)(1) and (3) of the Act and offers no other argument against enforcement of the decision and order. Thus, unless the Board abused its discretion in concluding that the settlement agreement was properly set aside, we should grant enforcement.

▪ Decisions of the National Labor Relations Board must be upheld if the Board's factual findings are supported by substantial evidence and if it has correctly applied the law. *NLRB v. Champ Corp.*, 933 F.2d 688, 691 (9th Cir.), *cert. denied*, 502 U.S. 957, 112 S.Ct. 416, 116 L.Ed.2d 437 (1991). If evidence supports two conflicting views, the Board's findings must be allowed to stand even though the reviewing court might have reached a different conclusion. *Id.*

In this case, the NLRB ruled that the term "reinstatement" in the settlement agreement had the meaning it would normally have been accorded by the Board had it entered a remedial order in response to an employer's violation of the Act. The Board

adopted the ALJ's conclusion "that reinstatement is generally to the position the discriminatee previously held." *Tualatin*, 312 NLRB at 132. The ALJ explained:

This is so because the parties were entering into a legal settlement of a charge alleging unfair labor practices under the Act on agency printed forms and were submitting the settlement for the approval of the Regional Director. Terminology used in such a context may fairly be held to bear the technical meanings of the trade. Language descriptive of actions to be taken in settlement of a unfair labor practice allegation—such as the term "reinstatement"—are surely terms of art which carry the meaning assigned them by the Board in its decisions.

*Id.* The ALJ also noted that "[a] different position or a similar position at a different location or facility is normally insufficient." *Id.*

▪ We hold that the Board did not abuse its discretion in approving the setting aside of the settlement agreement and that its interpretation of the term "reinstatement" in that agreement is consistent with its prior decisions. We also hold that its finding that Campbell's position at Project Thunder still existed is supported by substantial evidence. The NLRB's conclusion that the term "reinstatement" in the settlement agreement meant restoring Campbell to the position in which he would have been working, absent the unfair labor practice at issue, is a correct application of the law. *See Kallmann v. NLRB*, 640 F.2d 1094, 1103 (9th Cir.1981) ("The function of the remedy in unfair labor cases is to restore the situation, as nearly as possible, to that which would have occurred but for the violation."). For reinstatement orders to restore the situation as nearly as possible to that which would have existed if the discrimination had not occurred, unlawfully discharged workers should ordinarily be returned to their original jobs so that other employees are made aware, through the dis-

---

**5.** The Union contends that the NLRB's approval of the Regional Director's decision to set aside the settlement agreement is not reviewable by this court before the Board has issued a reviewable order because it amounts to a prosecutorial decision rather than an adjudicatory one. The Union would be correct if Tualatin had tried to appeal directly to this court. *NLRB v. United Food & Commercial Workers Union, Local 23*, 484 U.S. 112, 122–25, 108 S.Ct. 413, 420–21, 98 L.Ed.2d 429 (1987). That not being the case, we address the merits.

criminatee's return, that their rights to engage in concerted activity will be protected. *See, e.g., M Restaurants, Inc.,* 228 NLRB 930, 1977 WL 8470 (1977), *supplemented,* 238 NLRB 1575, 1978 WL 8379 (1978), *enf. granted,* 621 F.2d 336 (9th Cir.1980).

 In short, the employer must offer reinstatement to the former position if it still exists. *NLRB v. Jackson Farmers, Inc.,* 457 F.2d 516, 518 (10th Cir.1972). An offer for a "substantially equivalent" position is permissible only when the original position from which the discriminatee was unlawfully terminated is no longer available. *Id.*

> [W]hen employees are unlawfully discharged and the NLRB orders reinstatement to their former or substantially equivalent positions, the employer does not have a choice of offering either the former or an equivalent position. If the former position still exists, he must offer that one.

*Id.; See also NLRB v. Draper Corp.,* 159 F.2d 294, 297 (1st Cir.1947) (stating that remedial principles "require reinstatement of the employee to his former position wherever possible, but if such position is no longer in existence then to a substantially equivalent position").[6]

 There is substantial evidence in support of the NLRB's determination that Campbell's job at Project Thunder remained available following Tualatin's reinstatement offer. Thirty-five to forty-six electricians were working on Project Thunder during the week before and after Campbell was offered reinstatement at the Wal–Mart site. Also, some of the employees at the Wal–Mart site were working simultaneously at Project Thunder. Moreover, in its reply brief, Tualatin concedes that the record contains substantial evidence supporting the NLRB's finding.

 Finally, Tualatin contends that the requirement that discriminatees be reinstated to their former positions should not be applied to employers in the construction industry. Tualatin offers no authority for this

contention. The Board did not find this argument persuasive, *Tualatin,* 312 NLRB at 133, and we agree with the Board that no such exception for the construction industry exists.

### III. Conclusion

We conclude that the NLRB did not abuse its discretion in approving the Regional Director's setting aside of the informal settlement agreement. Because the Board's factual findings are supported by substantial evidence and because the Board correctly applied the law, we grant the petition for enforcement of its decision and order in their entirety.

PETITION FOR ENFORCEMENT GRANTED.

---

**6.** There is no authority for Tualatin's suggestion that this requirement should be different if the former job is not likely to exist for a' significant period of time in the future. If it exists at the time of reinstatement, as was true in this case, the discriminatee should be given the option of returning to that position. *Draper Corp.,* 159 F.2d at 297.