State of **MICHIGAN; Douglas Rothwell, Director, Michigan Jobs Commission; Kathleen Wilbur, Director, Department of Consumer and Industry Services, Plaintiffs,**

v.

**Alexis M. HERMAN, Secretary of Labor, United States Department of Labor; Raymond J. Uhalde, Acting Assistant Secretary, United State Department of Labor Employment and Training Administration; Melvin J. Howard, Acting Regional Administrator, United States Department of Labor, Defendants.**

No. 5:98CV–16.

United States District Court,
W.D. Michigan,
Southern Division.

May 15, 1998.

· R. John Wernet, Jr., Asst. Atty. Gen., Frank J. Kelley, Atty. Gen., Social Services Div., Lansing, MI, James Richard Viventi, Frank J. Kelley, Atty. Gen., Okemos, MI, for Plaintiffs.

Edith A. Landman, Asst. U.S. Atty., Michael H. Dettmer, U.S. Atty., Grand Rapids, MI, Margaret S. McCarty, U.S. Dept. of Justice, Civ. Div., Wahsington, DC, San-

dra Schrailbman, U.S. Dept. of Justice, Civ. Div., Washington, DC, for Defendants.

Eric E. Doster, Foster, Swift, Collins & Smith, PC, Lansing, MI, for amicus.

## OPINION

ROBERT HOLMES BELL, District Judge.

This case, which arises under the Wagner–Peyser Act, 29 U.S.C. § 49 *et seq.*, is currently before the Court on the parties' cross-motions for summary judgment and on Defendants' motion to dismiss for lack of jurisdiction.

### I.

On February 2, 1998, the State of Michigan[1] filed a complaint for declaratory and injunctive relief and for mandamus.[2] The complaint centers on the issue of whether states are required to employ merit staffing in the delivery of employment services under the Wagner–Peyser Act.

In its complaint the State requests the Court to grant the following relief: (1) to issue a declaratory judgment holding that the Wagner–Peyser Act does not require a state to utilize state classified civil service employees to deliver employment services under that act and that Defendant has no authority to impose such a requirement and may not condition approval of a state plan upon such a requirement; (2) to issue a permanent injunction prohibiting Defendant from summarily terminating Michigan's Wagner–Peyser funding and from imposing such a merit requirement as a condition of approving a state plan under the Wagner–Peyser Act; and (3) to issue a writ of mandamus directing the Secretary to accept and approve Michigan's modified state plan.

Congress enacted the Wagner–Peyser Act, 29 U.S.C. § 49 *et seq.* in 1933 "to promote the establishment and maintenance of a national system of public employment offices." 29 U.S.C. § 49. The Act provides federal funding to the states to operate employment service programs. The primary purpose of employment service programs is to provide a free labor exchange to assist jobseekers in finding employment and to assist employers in filling job vacancies. Federal funding is provided to those states that have prepared and submitted to the Secretary of Labor an employment services plan that conforms to the provisions of the Act and is reasonably appropriate and adequate to carry out its purposes. 29 U.S.C. § 49g(e).

The State of Michigan has participated in the Wagner–Peyser Act program since 1935. For more than 60 years, the State has staffed its employment services offices with civil service or merit-staffed personnel.

On August 6, 1997, John Engler, Governor of the State of Michigan, signed Executive Order 1997–12 which reorganized Michigan's Employment Security Agency, the umbrella state agency which operated both the unemployment compensation and employment services programs. On November 17, 1997, Governor Engler signed Executive Order No.1997–18 which mandated that Michigan's Employment Service Agency provide employment services "via Workforce Development Boards [WDBs] in the same manner the state's other workforce development programs are provided,

1. The several Plaintiffs in this action—the State of Michigan, Douglas Rothwell, Director of the Michigan Jobs Commission, and Kathleen Wilbur, Director of the Michigan Department of Consumer and Industry Services—will be referred to throughout this opinion in the singular as "the State."

2. The several Defendants in this action—Alexis M. Herman, Secretary of the United States Department of Labor, Raymond J. Uhalde, Acting Assistant Secretary of the United States Department of Labor, Employment and Training Administration, and Melvin J. Howard, Acting Regional Administrator of the United States Department of Labor—will be referred to throughout this opinion in the singular as "the Department of Labor."

including federal Job Training Partnership Act programs, federal School–to–Work, federal One–Stop and Work First." Under the new plan, the Workforce Development Boards were to contract with private entities to provide employment services.

On December 5, 1997, the State submitted a modified state plan for the delivery of employment services in a manner consistent with the mandate of Executive Order No.1997–18. The Department of Labor responded on December 24, 1997, that it could not approve the modification as submitted for a number of reasons, including the plan's failure to meet the Wagner–Peyser Act's requirement that states deliver employment services via state merit-staffed or civil service employees.

The State revoked its Plan, then resubmitted it on February 28, 1998. The Department of Labor formally denied the Plan on February 27, 1998, again based, in part, on its assertion that the Wagner–Peyser Act requires merit staffing.

Meanwhile, on February 2, 1998, the State filed this action for declaratory judgment, injunctive relief and mandamus. Plaintiff's immediate concern was the Department of Labor's notice to the State that if it proceeded to implement its modified and unapproved employment services plan, the Department of Labor intended to impose sanctions, including decertification and the withholding of Wagner–Peyser Act funds.

Plaintiffs' motion for preliminary injunction was denied in an opinion and order dated February 10, 1998. In that opinion this Court observed that the parties appeared to be at an impasse on the merit staffing issue. The Court set an abbreviated time table for the submission of cross-motions on the issues raised by Plaintiff's request for declaratory relief.

## II.

■ The Department of Labor has filed a motion to dismiss for lack of jurisdiction because the State has not plead any statute that waives the federal government's sovereign immunity.

Defendants concede that a waiver of sovereign immunity would exist under the Administrative Procedures Act ("APA") if the State had plead its case under the APA. Section 702 of the APA provides in pertinent part:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702.

The Sixth Circuit has aligned itself with those Circuits that have concluded that "5 U.S.C. § 702 waives the sovereign immunity defense in actions for non-monetary relief under Section 1331." *Warin v. Dir., Dept. of Treasury,* 672 F.2d 590, 591 (6th Cir.1982).

Although the State has not cited to the APA in its complaint, the State is seeking non-monetary damages and it is complaining that the Department of Labor has failed to act in accordance with the law. Because the substance of the State's complaint falls within the scope of an action under § 702 of the APA, this Court will deem the complaint amended to state such a claim.

■ The Department of Labor argues that even if the complaint were amended to challenge agency action under the APA, this action should nevertheless be dismissed on the ground that it is premature and merely seeks an advisory opinion. The Department notes that its disapproval of the State's plan rested on several grounds in addition to the merit staffing issue.[3]

---

**3.** The other reasons articulated by the Depart-    ment of Labor for disapproving the State's

The State has represented that it believes it can work out the other issues administratively with the Department of Labor, and that the only matter it seeks this Court's ruling on is the legal issue of merit staffing.

It appears to this Court that there is no reasonable expectation that the merit staffing issue can be resolved by the parties. This is not a hypothetical issue. In addition, because merit staffing is a strictly legal issue, and because resolution of the merit staffing issue will assist the parties in ultimately resolving their differences, the Court finds that this matter is ripe for declaratory relief. The Department of Labor's motion to dismiss will accordingly be denied.

## III.

■ Plaintiff contends that the State of Michigan is not required to utilize merit-staffed employees to deliver federally funded employment services under the Wagner–Peyser Act, and that the imposition of such a requirement is inconsistent with the language and legislative history of the Act.

Defendant acknowledges that the Wagner–Peyser Act does not explicitly impose or authorize a merit staffing requirement. Nevertheless, Defendant contends that its construction of the Wagner–Peyser Act to require merit staffing is supported by the language of the statute and is consistent with Congressional intent.

■ The interpretation of a statute by the agency charged with its administration is entitled to substantial deference. *Federal Election Commission v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 31–32, 102 S.Ct. 38, 70 L.Ed.2d 23 (1981); *United States v. Rutherford*, 442 U.S. 544, 553, 99 S.Ct. 2470, 61 L.Ed.2d 68 (1979). "[I]f a statute is silent or ambigu-

ous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). While the court must reject administrative constructions of a statute that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement, the court should follow the construction of a statute by those charged with its execution unless there are compelling indications that it is wrong. *Michigan United Conservation Clubs v. Lujan*, 949 F.2d 202, 206 (6th Cir.1991) (citing cases). To survive judicial scrutiny, the agency's interpretation "need not be the best or most natural one," so long as it is reasonable. *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 702, 111 S.Ct. 2524, 115 L.Ed.2d 604 (1991). In judging the reasonableness of the agency's interpretation, the Court may not substitute its own judgment for that of the agency. *See Arkansas v. Oklahoma*, 503 U.S. 91, 114, 112 S.Ct. 1046, 117 L.Ed.2d 239 (1992). Instead, the Court must uphold the agency's construction if it is "rational and consistent" with the statute. *NLRB v. United Food & Commercial Workers Union*, 484 U.S. 112, 123, 108 S.Ct. 413, 98 L.Ed.2d 429 (1987).

The requirement for merit staffing was adopted by the United States Employment Service in 1934, and merit staffing was formally made a condition of participation in 1935. The Department of Labor contends that authority for this requirement can be found in sections 3(a) and 5(b) of the Act, 29 U.S.C. §§ 49b(a) & 49d(b).

Section 3(a) authorizes the Department of Labor to develop and prescribe "minimum standards of efficiency" for the administration of employment services throughout the country. Congress did not

---

plan include: 1) the State's failure to show that it has met the statutory consultation requirement in developing its plan; 2) the plan's failure to ensure that all persons seek-

ing job placement services would be served; and 3) the plan's failure to demonstrate that all critical components of employment services will be provided.

define the term "minimum standards of efficiency." However, merit staffing has been viewed by the Department of Labor as a method of insuring minimum standards of efficiency because it guarantees nonpartisanship and competent state personnel.

In 1935, in response to the State of Missouri's objection to the merit staffing requirement, the Solicitor of the Department of Labor issued an opinion to the effect that merit staffing was a method of developing and prescribing "minimum standards of efficiency" as authorized by section 3(a) of the Wagner–Peyser Act.

The other language of the Wagner–Peyser Act the Department of Labor relies on to support its merit staffing requirement is Section 5(b) of the Act. This section, added in 1950, provides for payment of federal funds to each state which

> has an unemployment compensation law approved by the Secretary under the Federal Unemployment Tax Act and is found to be in compliance with section 503 of Title 42 [section 303 of the Social Security Act, as amended]. Defendant interprets § 5(b) to require a state to meet

section 503's merit staffing requirement for purposes of its Wagner–Peyser Act program, as well as its unemployment compensation program. The State contends that this section merely requires the unemployment compensation system to be in compliance with the merit staffing provisions.

Before the Wagner–Peyser Act was enacted, Congress specifically withdrew a provision in the house and senate bills that required federal employees hired to carry out the provisions of the Act to be civil service employees. *See* S.510 & H.R.4559, 73 Cong. 1st Sess. (1933). The legislative history indicates nothing, however, about Congress' intention with respect to state employees hired to carry out the provisions of the Wagner–Peyser Act.

Because neither the Wagner–Peyser Act nor its legislative history provide clear guidance on the issue of merit staffing, the parties have steered the Court to various actions taken by Congress that may shed some light on Congressional intent with respect to merit staffing and the Wagner–Peyser Act.

The State observes that Congress has amply demonstrated its ability to craft a statutory requirement imposing a merit staffing requirement upon states in their operation of federally funded programs. It imposed precisely such a requirement upon state unemployment insurance programs in 1939 when it amended Title III of the Social Security Act. *See* 42 U.S.C. § 503(a)(1). Congress could similarly have included a merit staffing requirement in the Wagner–Peyser Act if had chosen to do so.

■ The State also points out that the Department of Labor has not included a merit staffing requirement in the rules implementing the Wagner–Peyser Act, which are found at 20 C.F.R. § 601 et seq. As noted by the Seventh Circuit, it is appropriate to distinguish between "those statements of legislative intent that the agency embodies in formal regulations and that, consequently, have the benefit of careful crafting and comment, and those more informal statements that do not necessarily reflect the deliberate focus of the entire agency on the issue of congressional intent." *Pennington v. Didrickson*, 22 F.3d 1376, 1383 (7th Cir.) (footnote omitted), *cert. denied*, 513 U.S. 1032, 115 S.Ct. 613, 130 L.Ed.2d 522 (1994).

From 1941–1945, during World War II, employment services were absorbed by the federal government. After the end of the war, employment services were reassigned to the states. From 1947 through 1963, on a year-to-year basis, Congress inserted specific language into the Department of Labor's annual appropriation act imposing a merit staffing requirement on the states' operation of employment services programs.

The State contends that the specific imposition of a merit staffing requirement upon the states through annual appropriations acts evidences Congress' acknowledgment that the Wagner–Peyser Act, standing alone, did not require merit staffing.

■ It is a cardinal principle of statutory construction that the court should give effect, if possible, to every clause and word of a statute rather than to nullify an entire section. *Bennett v. Spear*, 520 U.S. 154, 117 S.Ct. 1154, 1166, 137 L.Ed.2d 281 (1997) (citations omitted).

If merit staffing were already required by § 3a of the Wagner–Peyser Act, there would have been no reason for Congress to explicitly add the merit staffing requirement to the appropriations acts. In order to give meaning to the merit staffing language in the appropriations acts, the State contends the Court must conclude that Congress understood that the Act did not contain such a requirement.

The Department of Labor suggests a different interpretation of the 1947 to 1963 appropriations bills. The Department of Labor contends that inclusion of the merit staffing language in the appropriations bills was a method by which Congress clarified and ratified the Department of Labor's imposition of a merit staffing requirement.

The merit staffing requirement was dropped from the appropriations bill in 1964, and since that time no similar language has appeared in the Department of Labor's appropriations acts.

In 1964 the Department of Labor promulgated a new rule that required merit staffing under the Wagner–Peyser Act. The Department contends that it is reasonable to infer that Congress dropped the requirement from the appropriations bill in light of the Department of Labor's promulgation of a regulation requiring merit staffing under the Wagner–Peyser Act. In the alternative, the Department suggests that the 1947 to 1963 appropriations acts could be construed as a means by which Congress temporarily removed the discretion of the Secretary to require merit staffing. Congress then returned that discretion to the Secretary from 1964 to the present.

The State contends, on the other hand, that the omission of the merit staffing requirement from the appropriations acts can be construed as evidence that Congress understood that merit staffing was not a requirement under the Act and that Congress no longer intended to make merit staffing a prerequisite to state funding under the Wagner–Peyser Act. Moreover, the State points out that the authority cited by the Department of Labor in support of the rule is § 49n, the codified form of the appropriations acts. The Department of Labor did not cite to either section 3a or 5b of the Wagner–Peyser Act for authority to enact the merit staffing rule. Since Congress' response to the drafting of the rule was to remove the authority for the rule, the State questions the Department of Labor's characterization of Congress' termination of the merit staffing requirement in the appropriations acts as a ratification of the new rule.

There is yet another action taken by Congress, the import of which the parties disagree on. In 1971 Congress enacted the Intergovernmental Personnel Act, 42 U.S.C. § 4701, et seq., which transferred to the Office of Personnel Management all of the functions, powers and duties of the Secretaries of Agriculture, Labor and Health and Human Services under 15 listed acts, "insofar as the functions, powers and duties relate to the prescription of personnel standards on a merit basis." 42 U.S.C. § 4728. Included in the transfer were the duties of the Secretary of Labor under the Wagner–Peyser Act. Since the enactment of the Intergovernmental Personnel Act, the Office of Personnel Management has continuously listed the Wagner–Peyser Act as one of the statutes requiring the establishment and maintenance of personnel standards on a

merit basis. 5 C.F.R. Part 900, Subpart F, Appendix A.

The Department of Labor contends that if there had been no statutory authority under Wagner–Peyser Act, there would have been nothing to transfer, and section 4728(a)(2)(A) would be a nullity. As noted earlier, Courts should construe statutes to give effect to each provision. *Bennett,* 117 S.Ct. at 1166. In order to give meaning to Congress' inclusion of the Wagner–Peyser Act in the Intergovernmental Personnel Act, the Court should infer that Congress was ratifying the Department's merit staffing requirement under the Wagner–Peyser Act.

The State concedes that the Intergovernmental Personnel Act makes it appear as though Congress thought the Wagner–Peyser Act contained a merit staffing requirement. The Wagner–Peyser Act, however, is the only statute listed in the Intergovernmental Personnel Act that is cited in general terms and not by reference to a specific statutory section. The State also reminds the Court that the Intergovernmental Personnel Act did not create a merit staffing requirement, but merely transferred responsibility for merit staffing "insofar" as such responsibilities existed.

In its amicus brief, the Michigan Chamber of Commerce has argued that the Department of Labor has not been consistent in requiring merit staffing based upon the following examples:

1. On May 5, 1986, Steven M. Singer, Regional Administrator for the Department of Labor, sent a letter to the Indiana Employment Security Division, noting that "[i]t is the opinion of this office that nothing in the Act or Regulations prohibits the subcontracting of Wagner–Peyser funded activities."

2. John R. Beverly III, Director of the U.S. Employment Services has stated that "there does not appear to be any legal impediments to outsourcing Wagner–Peyser services."

3. Beverly has also acknowledged that the Department of Labor has permitted Massachusetts to privatize employment services in some areas of the state and that the Department of Labor is willing to permit outsourcing in Michigan on a pilot basis in limited geographic areas.

The Department of Labor responds that citation to 3 instances of inconsistency in a history spanning more than 60 years, is not symptomatic of a lack of agreement within the Department on the need for merit staffing. Moreover, none of the three instances truly reflects an inconsistency in agency policy. The 1986 letter was from a regional director who did not speak on behalf of the agency as a whole, and Beverly's statements refer only to pilot programs.

Upon consideration, the Court concludes that none of the alleged inconsistencies cited by amicus Michigan Chamber of Commerce represent a rejection of the merit staffing requirement by the Department of Labor. The statements of one regional administrator do not bind the Department as a whole, and Mr. Beverly's willingness to consider some outsourcing of state employment services through pilot programs on a trial basis is not sufficient to constitute a repudiation of the Department's position that merit staffing is required under the Act.

Congress has never taken any action indicating disapproval with a merit staffing requirement for employment services. Congress has never stated that the Department should not require merit staffing under the Wagner–Peyser Act. Perhaps, as suggested by the Department of Labor, Congress has been satisfied to leave the determination to the discretion of the Department of Labor.

■ The Wagner–Peyser Act does not explicitly require merit staffing and its legislative history is at best ambiguous on the issue. The Court cannot state, as a matter of law, which of the various interpretations presented more accurately re-

flects Congressional intent. Congress has never clearly ratified or rejected the Department's inclusion of a merit staffing requirement. Nevertheless, the language in § 3a authorizing the Secretary to develop and prescribe "minimum standards of efficiency" is broad enough to permit the Secretary of Labor to require merit staffing. Moreover, there is a 64 year history of requiring merit staffing, and Congress has never explicitly rejected the merit staffing requirement. "[C]ongressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress." *Young v. Community Nutrition Institute,* 476 U.S. 974, 983, 106 S.Ct. 2360, 90 L.Ed.2d 959 (1986). While there is ample basis for a conflicting interpretation of the Wagner–Peyser Act's requirements, given the deference owed to the agency charged with administering the Act, the Court can find no compelling indications that the Department of Labor's construction of the statute is wrong. *See Michigan United Conservation Clubs,* 949 F.2d at 206.

The Court concludes that the Department of Labor's construction of the Wagner–Peyser Act to require merit staffing is a reasonable and permissible interpretation of the Act. Accordingly, the Court will deny Plaintiff's motion for summary judgment and will grant Defendant's motion for summary judgment. The Court will enter a declaratory judgment in favor of Defendant, declaring that the Department of Labor's interpretation of the Wagner–Peyser Act to require merit staffing is neither arbitrary or capricious nor in excess of the Department's statutory authority.

Based upon the State's representation that it will continue to work administratively on resolving the other issues raised by the Department concerning the State's plan, the Court considers the other issues raised by the complaint, such as the request for mandamus, to have been effectively withdrawn by the State without prejudice to the State's ability to raise this issue again after a final ruling has been made by the Department of Labor on the State's plan. Accordingly, the declaratory judgment being entered today will be a final, appealable judgment.